W. L. WITTICH, APPELLANT, VS. GEORGE H. O'NEAL ET AL., APPELLEES.

1. In a suit on the bond given to obtain a temporary injunction, counsel fees incurred by the defendant in the suit to dissolve such injunction are damages that may be recovered if covered by language of the bond.

2. The amount of such fees is not to be ascertained by any agreement between such defendant and his attorney, but must be a reasonable charge for the service performed.

3. A liability incurred by the defendant for attorney's fees for the purpose of dissolving the injunction, is sufficient to enable him to recover from the complainant therein a reasonable sum, without having actually paid such fees.

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*W. A. Blount* for Appellant.

*J. C. Avery* for Appellees.

Appellees admit that the courts of last resort in most of the States have decided the question in this cause against their position; but they plant themselves with confidence on the decision of the United States Supreme Court, which has been uniformly followed by the other Federal Courts and some of the State Supreme Courts. Oelrichs vs. Spain, 15 Wall., 211; Olliphant vs. Mansfield, 36 Ark., 191.

Several of the State Supreme Courts have held that at-

torneys' fees for defending the title are not recoverable in actions upon covenants. Turner vs. Miller, 42 Tex., 418; Leffinguree vs. Elliott, 10 Pick., 204; Sarpy vs. New Orleans, 14 La. Ann., 311; Kermian vs. Taylor, 18 N. H., 220.

Such cases are very nearly akin to suits on bonds for damages in injunction proceedings.

The case of Oelrichs vs. Spain squarely decides the question presented in this case. It does appear that the allowance of fees in the court below was for all services in the adverse litigation. But the decision disallows all fees, including fees for obtaining the dissolution of the injunction, and is, therefore, a decision directly in point by the highest tribunal of the land.

Public policy is against the allowance of fees of attorneys as damages in any suit.

What is that policy?

The language of appellant's brief aptly expresses it: "They are disallowed from motives of public policy, because, otherwise, the courts would be closed to the timid and open to the bold, righteous claims would be unasserted, and righteous claims undefended for fear of the heavy loss entailed by a failure to win a verdict, and the courts would no longer be for the rich and the poor alike. The true policy is to cheapen litigation in order that the assertion of right should not depend entirely upon the pecuniary ability of the assertor."

Another reason of that policy is that an attorney in the prosecution of his client's cause should not be, or be suspected to be, or subject to the suspicion of being, diligent or negligent in proportion to the pecuniary condition of his client's adversary. Such temptations tend to barratry, etc.

38

In what respect does a claim for an attorney's fee against an unsuccessful adversary, when based upon a bond for damages, differ from such claim without reference to such bond, in so far as public policy is concerned? I am unable to discern in what particular there is a greater morality or a wiser or purer public policy in the one than in the other.

If it is immoral, unwise or against a pure public policy to require an unsuccessful suitor to pay the fee of his adversary's attorney incurred in an action of slander, false imprisonment or trover in which there is no bond, how does the giving of a bond alter the case? If it does, then if the Legislature should enact that at the institution of every suit a bond must be filed by the plaintiff to indemnify the defendant for damages resulting from the bringing of the suit, the whole policy referred to would be defeated and a great impetus given to litigation. Substance would be forced in all cases to yield to form. Policy would be wiped out by a quibble.

In ordinary actions the law gives a successful suitor the damages he has sustained by reason of the injury on account of which he sues. But in doing this, there is excluded from reasons of public policy the money expended in employing attorneys in the suit.

When a bond is given conditioned to pay damages, the law likewise gives the damages sustained by the obligee; but why should not the same public policy exclude from such allowance the fees paid attorneys, as in other cases?

I am unable to discover, and I think there cannot be found a satisfactory reason for adopting in the latter case a policy different from that which governs in the former.

As this is the first time that this court has been required to pass upon this question, why should its decision not be based upon the wise policy which the highest court in the

country has adopted, rather than upon a preponderance of the State Supreme Court's rulings, which are opposed to the policy governing in all similar cases?

I submit that to fix the rule in this State, in accordance with that laid down in Oelrichs vs. Spain, will, at least, tend to elevate and purify the ethics of the bar.

The language of the bond must be critically examined. 1 Sedgwick on Dam., 179, note (7th Edition).

There is nothing in the language of the bond in this case indicative of an intention to extend the damages beyond what is usual in cases where damages are sued for.

It is not even alleged that the fees have been paid. Many courts hold this to be necessary. Pruder vs. Grimm, 28 Cal., 11; Packer vs. Nevin, 67 N. Y., 550.

THE CHIEF JUSTICE delivered the opinion of the court:

The questions presented by the record are:

1st. In a suit on the bond given to obtain a temporary injunction are counsel fees, incurred to dissolve the injunction, damages that may be recovered?

2d. Is it essential that the plaintiff in such suit should have actually paid such fees, or is it sufficient that he has become liable therefor?

The record shows that a temporary injunction was issued in a suit then pending between the surviving partners of the firm of Keyser, Judah & Co., and W. L. Wittich, and that the injunction was dissolved " by the judge of said court upon the application of the defendant in said suit, the plaintiff herein," on the 6th April, 1881, and that on the 9th day of April, 1885, a final decree was rendered in the suit dismissing the bill therein.

The appellees were securities on the injunction bond, the condition of which is that if the obligors " shall pay to

the said W. L. Wittich all damages he may sustain by the issuing of said injunction in case the injunction be hereafter dissolved, then this obligation to be void."

If the plaintiff was compelled to employ counsel to dissolve the temporary injunction, it is clear that he was damaged to that extent, and the question above mentioned arises as to whether such damages are recoverable or not.

In the case of Ah Thaie vs. Quan Wan & Kan Se, 3 Cal., 216, the complaint stated that on the 28th of May, 1853, one Chin Lan and Ah Lee filed a complaint against the plaintiff, and sued out a writ of injunction against the plaintiff; that to obtain the same the defendants executed a bond for $8,100, to pay the plaintiff such damages as he might sustain by reason thereof; that the plaintiff was obliged to procure counsel to obtain a dissolution of such injunction at the cost of $1,200. Defendants demurred and assigned for cause the charge of $1,200 paid counsel. The court held: "The language of the condition of the bond is undoubtedly broad enough to embrace the necessary counsel fees, which the defendants have been obliged to pay out in order to procure the dissolution of the injunction. The necessity of paying such counsel fees is an actual damage that the defendant has sustained in defending himself and procuring a dissolution of the injunction, and the condition of the bond is imperative that the obligors " shall pay to the parties injured such damages as they may sustain by reason of the injunction." "It appears to us that the principle is not only just in equity, but sound in law, that all the damages to which a party may be put by the wrongful issuance of an injunction should be recoverable in action on the bond, and reasonable counsel fees should be included in those damages, of course, leaving the amount to be assessed by the jury." The court cited in this case the decision of Chancellor Walworth, in Edwards

vs. Bodine, 11 Paige Chancery Reports, 224, 225. The same principle has been upheld in the following cases. Darby Bank vs. Heath, 45 N. H., 524; Collins vs. Sinclair, 51 Ill., 328; Behrens vs. McKensie, 23 Iowa, 341; Reece vs. Northway, 58 Iowa, 187; Brown vs. Jones, 5 Nevada, 374, 377; Livingston vs. Exum, 19 South Carolina, pp. 223, 229. Many other cases might be cited to the same effect.

Appellees very frankly admit the " courts of last resort in most of the States have decided the question in this cause against their position," but they plant themselves with confidence on the decision of the United States Supreme Court in Oelrichs vs. Spain, 15 Wallace, 211, which has been followed by the other Federal Courts, and some of the State Supreme Courts. The language of the Supreme Court, on the question, is as follows: " The point here in question has never been expressly decided by this court, but it is clearly within the reasoning of the case last referred to, and we think is substantially determined by that adjudication. In debt, covenant and assumpsit, damages are recovered, but counsel fees are never included. So in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendants, however unjust the litigation on the other side, and however large the *expensa litis* to which he may have been subjected. The parties in this respect are upon a footing of equality. There is no fixed standard by which the *honorarium* can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party there is danger of abuse. A reference to a master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly

be more animated and protracted than that in the original cause. It would be an office of some delicacy on the part of the court to scale down the charges, as might sometimes be necessary."

" We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

The cases of Oliphant vs. Mansfield, 36 Ark., 191, and Wood et al. vs. State, for use of White, Court of Appeals of Maryland, July 15th, 1886, are based on Oelrichs vs. Spain, and contain no argument or reason that is not found in said case.

Against such an array and weight of authority as sustain the conclusion of the court, as expressed in 3 California, 216, in favor of the principle that attorney fees are recoverable in a suit on an injunction bond, we are loth to follow the few authorities that hold the contrary, in the absence of some controlling argument or reason that would convince our judgments of the correctness of these conclusions.

The reasons set forth in Oelrichs vs. Spain are to our minds not satisfactory, and we think are fully answered in the brief of counsel for appellant.

What would be the rule where a bill was filed to enjoin a defendant from the performance of some act or the enjoyment of some right, and the temporary injunction was dissolved after a trial of the main suit by virtue of the judgment therein, we express no opinion. The authorities that hold that counsel fees are recoverable differ as to whether they are recoverable in such a case.

The case at bar is one in which the main suit was pending ; a temporary injunction was issued and dissolved on the application of the plaintiff in this suit before a determination of the main suit. In such a case the temporary injunction is an extraordinary remedy. Unlike the usual

course of law, which " proceeds upon inquiry and only condemns after a hearing," it is often *ex parte* and condemns temporarily before a hearing. It seems just and right that where a party asks the interposition of the power of the courts, in advance of a trial of the merits of the cause, to deprive the defendant of some right or privilege claimed by him, even though temporarily, that if on investigation it is found that the plaintiff had no just right either in the law or the facts to justify him in asking and obtaining from the court such a harsh and drastic exercise of its authority, that he should indemnify the defendant in the language of his bond for " all damages he might sustain," and that *reasonable* counsel fees necessary to the recovering of such injunction are properly a part of his damage.

The remaining question is, a liability for the payment of counsel fees sufficient, or must they have been actually paid? Counsel for appellee cites us to two cases, Packer vs. Nevin, 67 N. Y., 550, and Prader vs. Grimm, 28 Cal., 11. In the first of these cases this question was not before the court. " A preliminary injunction was obtained and upon agreement of the parties it was ordered that the question of defendant's damages, if any, sustained by reason of the injunction, be heard and determined, jointly with the issues, by the referee. No evidence of damage of any kind was given on the trial, no finding of facts was made by the referee in regard thereto, nor were any requests made to find." The court said " that it was not imperative for the referee to make an allowance for counsel fees without proof of payment, *or that a liability had been incurred therefor.*"

The California case cited squarely sustains the position of the appellee, but we think the great weight of authority maintains the principle that a fixed liability is sufficient without actual payment. In the case of Underhill vs. Spencer, 25 Kansas, 71, 73, the court say : " The other ques-

tion is, whether the defendant in the injunction suit can re-cover the fees of his attorney for services in obtaining a dis-solution of the injunction before he has paid them.     In this case the amount was agreed upon and the sum was reason-able.     The defendant's liability was absolute, but the fees had not in fact been paid.     With perhaps the single excep-tion of California, the authorities agree that if the liability is fixed and absolute, it is enough ; payment is not an essen-tial pre-requisite.     Garrett vs. Logan, 19 Ala., 344 ; Miller vs. Garrett, 35 Ala., 96 ; McRae vs. Brown, 12 La. Ann., 181 ; Brown vs. Jones, 5 Nev., 374 ; Noble vs. Arnold, 23 Ohio St., 264 ; 2 High on Injunctions, 1685 ; Shultz vs. Morrison, 3 Metc., (Ky.) 98 ; Steele vs. Thatcher, 56 Ill., 257."

We do not wish to be understood as holding that the de-fendant and his attorney can fix the fee which the plaintiff in the injunction suit must pay.  Such fees must be reason-able and proportionate to the value of the services to the defendant and the skill shown and work done by the counsel.

Judgment reversed and cause remanded.