(No. 17221.—Reversed and remanded.)
DONNA G. SCHERZER et al. Appellants, vs. CHARLES L.
KELLER et al. Appellees.

*Opinion filed April 23, 1926—Rehearing denied June 3, 1926.*

1. CONSTITUTIONAL LAW—*statutes allowing attorneys' fees in proper cases are not subject to charge of special legislation.* While attorneys' fees are not, as a rule, recoverable between litigants, statutes embracing classes of cases and persons which have been selected upon grounds constituting a valid distinction for legislation and not arbitrarily determined may apply a different rule without being subjected to the charge of special legislation.

2. SAME—*application of general law in cases not specified in constitution is left to discretion of legislature.* The clause of section 22 of article 4 of the constitution which prohibits the enactment of special legislation, in addition to enumerated cases, in all other cases in which a general law can be made applicable is addressed to the General Assembly, alone, whose action is not subject to judicial review as to whether a general law can be made applicable or not.

3. INJUNCTION—*statute allowing attorneys' fees on dissolution of injunction is valid.* Section 12 of the Injunction act, authorizing the assessment of damages, including attorneys' fees, in cases where an injunction is dissolved, is not invalid as making illegal discrimination between the parties litigant, and its application to injunction cases, only, is a reasonable and not an arbitrary classification.

4. SAME—*when attorneys' fees may be assessed as damages on dissolution of injunction.* Where an injunction is merely ancillary to the principal relief sought by the bill and its dissolution is only incidental to the defense made, counsel's fees incurred in defending the suit generally cannot be assessed as damages, but where they are necessarily incurred in procuring a dissolution of the injunction they may be allowed as damages; and the fact that the filing of the answer and preparation of the motion to dissolve also simplifies the preparation of the defense of the cause on the merits is not material.

5. SAME—*attorneys' statement is not evidence of value of fees.* In assessing damages upon dissolution of an injunction a bill rendered by attorneys for their services is not evidence either of the services rendered or their value, but where there is competent evidence on the question of attorneys' fees it will be presumed the court, in allowing fees, disregarded what was incompetent.

6. SAME—*what is not proper item in assessing damages on dissolution of injunction.* In assessing damages upon dissolution of an injunction, issued against a firm of engineers to enjoin their proceeding with plans for the construction of a bridge, as exposing a trade secret of the complainants, the allowance of a certain sum paid to extra draftsmen to hasten the completion of the plans after dissolution of the injunction is improper, where the evidence does not show that the sum paid to the draftsmen was a necessary additional expense caused by the injunction.

7. SAME—*when assessment of damages in favor of two defendants is proper.* In assessing damages upon dissolution of an injunction against two defendants, the fact that only one of the defendants employed the attorneys to dissolve the injunction does not preclude an assessment, including attorneys' fees, in favor of the two defendants jointly, where they were partners and the injunction was against the prosecution of the partnership business.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

BANGS & FRANKHAUSER, (WENDELL McHENRY, of counsel,) for appellants.

BURRY, JOHNSTONE & PETERS, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This is an appeal by the complainants from a decree of the superior court of Cook county assessing damages of $1153.16 in favor of Charles L. Keller and H. P. Harrington upon the dissolution of an injunction and awarding execution against the complainants. The appeal has been brought directly to this court because the appellants claim that section 12 of the Injunction act, under which the assessment was made, is unconstitutional.

The bill was filed on February 5, 1925, by Donna G. Scherzer and the Scherzer Rolling Lift Bridge Company against the appellees and others, the object of which was to restrain the defendants from furnishing, making, drafting, finishing or completing, or attempting to furnish, make,

draft, finish or complete, plans for bridges of the type constructed by the Scherzer Rolling Lift Bridge Company,—that is, rolling lift bascule bridges,—over the Welland canal at St. Catherines, in the province of Ontario, Dominion of Canada, including bridges Nos. 3 and 4, and from in any manner agreeing or combining or conspiring to obtain, and obtaining, any other or different contract or contracts, and the superintendence of construction, drafting and preparing plans and specifications for the construction of any other bridge or bridges over the Welland canal of the type aforesaid in the province of Ontario and Dominion of Canada proposed and contemplated to be built by the Department of Railways and Canals of Ontario until the further order of the court. A temporary injunction was issued without notice and served on Keller and Harrington on February 7. They answered the bill on March 2, and on March 3 moved for the dissolution of the injunction. On March 10 the motion was allowed and they were given leave to file suggestions of damages within ten days. This time was afterward extended to April 20, and within this extended time suggestions were filed, and upon a hearing on October 9 the decree assessing damages was entered.

The bill alleged that Donna G. Scherzer was the owner of all of the stock of the Scherzer Rolling Lift Bridge Company, being one thousand shares of $100 each, par value; that the defendants Keller, Soule and Aszman attempted to purchase the stock and under the contract took possession of the assets of the company but defaulted in carrying out the terms of the contract, whereupon the circuit court of Cook county, upon a bill filed by Mrs. Scherzer, held the contract of purchase void. Mrs. Scherzer, on behalf of the company, then took possession of its assets and business and ousted Keller, Soule and Aszman. A contract of settlement was entered into between these three defendants and the company on February 22, 1922, by which Keller, Soule and Aszman agreed that they, and each of them,

would not thereafter use or reveal any of the trade secrets, processes, designs or modes of doing business of the Scherzer Rolling Lift Bridge Company in the carrying on of any business by them or any of them, and would not claim to be the Scherzer Rolling Lift Bridge Company or the successor or successors of that company or of its business, and would not use any endeavor to take away or interfere with any business which the bridge company was transacting or carrying on at the date of the contract; that they would not at any time after the date of the contract use the name "Scherzer" or the name "Rolling Lift Bridge" in carrying on or conducting any business by them or any of them, either directly or indirectly, or while in the employ of any other person, firm or corporation; that they would in all ways aid the Scherzer Rolling Lift Bridge Company in the carrying on and conduct of its business so far as consistent with their other business engagements, and would manifest toward the bridge company and Mrs. Scherzer the utmost good will and consideration and would at no time do or say anything to injure the bridge company or its business or Mrs. Scherzer. It was further alleged that a part of the business being carried on prior to and at the date of the contract and afterward carried on by the bridge company was the negotiation for making a contract with the Department of Railways and Canals of the province of Ontario for the drawing of plans and specifications and for the superintendence of the construction of bridges of the type controlled and constructed by the bridge company,—that is, rolling lift bascule bridges,—over the Welland canal at sundry places in that province, including bridges Nos. 3 and 4; that the company holds letters patent of the United States and Canada on that type of bridge; that Keller and Harrington, through Harrington, Howard & Ash, of Kansas City, Missouri, endeavored to take away and interfere with the business thus being transacted, and by negotiations

conducted by Keller and Harrington endeavored to prevent the bridge company from obtaining a contract for bridges Nos. 3 and 4 and others of the bridges to be constructed over the Welland canal, and through such negotiations Keller and Harrington, by Harrington, Howard & Ash, secured a contract from said department for one or more of said bridges and were at the time of the filing of the bill preparing plans and specifications therefor. The bill then prayed for an injunction, as has been already stated, and that such injunction be made permanent, or, in the alternative, that the court decree that the defendants complete the contract entered into for the preparation of plans and specifications and the construction and superintendence of construction of bridge No. 3 for the benefit of the Scherzer Rolling Lift Bridge Company, that an account may be taken, and for general relief.

The issues arising on this bill and the answer of the appellees are not involved in this appeal. On the hearing of the suggestions the complainants offered no evidence, and the court found that the defendants had sustained damage as the result of the granting of the injunction, for attorney's fees, $975; traveling expenses of attorney to Kansas City and return, $45.54; telegrams, $4.72; traveling expenses of Keller to Kansas City and return, $49.90; salaries paid extra draftsmen, $78; total, $1153.16.

The appellants contend that section 12 of the Injunction act, which authorizes the assessment of damages in cases where an injunction is dissolved, is unconstitutional because it violates sections 2, 14 and 19 of article 2, section 22 of article 4 and section 29 of article 6 of the State constitution and section 1 of the fourteenth amendment of the Federal constitution. The argument on this point is founded altogether on the proposition that this section is class legislation, and two arguments are advanced in favor of this proposition: (1) That the allowance of attorney's fees to the defendant upon a dissolution of an injunction,

and not to the complainant when he is successful, is an illegal discrimination between parties litigant; and (2) the law does not provide for recovery of attorney's fees in cases where the appointment of a receiver is vacated and the receiver discharged on motion of the defendant, or where an attachment is dissolved, or where an order for a writ of *mandamus* is vacated and discharged, or where an order in any other extraordinary proceeding is vacated and set aside.

The section does not make any arbitrary discrimination either between parties litigant or in regard to different classes of cases. The complainant who, in advance of a hearing and determination by the court of the rights of the parties, gets an injunction restraining a defendant in the use of his property or the conduct of his business, or who under like circumstances obtains the appointment of a receiver, or who seizes the property of the defendant and takes it out of his possession by virtue of a writ of attachment, or who by virtue of a writ of replevin takes from the possession of the defendant the property in controversy between them, in each of those cases is pursuing an extraordinary remedy outside the ordinary course of judicial proceeding and is for his own advantage depriving the defendant of the use of property in his possession or the conduct of business in which he is engaged. These proceedings are all regulated by statute, and before the complainant or plaintiff can avail himself of them he must comply with the provisions which the statute has required as a safeguard to the defendant, and in each case justice as well as the statute requires that he shall give a bond to secure the defendant against damages occasioned by the proceeding if unauthorized by law. In this respect these proceedings differ from the ordinary forms of litigation, and in this difference in the nature of the proceedings is found a reasonable basis for holding the party instituting them liable for all damages, including attorney's fees, occasioned by their improper commencement. In all the cases mentioned the law

holds the moving party liable in damages on the bond for attorney's fees where the proceeding has been improperly instituted. (*Gilbert* v. *Sprague*, 196 Ill. 444; *Chase* v. *Bodge*, 194 Ill. App. 352; *Os-Ko-Mon* v. *New York Star Co.* 211 id. 264; Laws of 1903, p. 290.) Under our system of law, attorney's fees are not recoverable, in general, between litigants, but statutes embracing classes of cases and persons which have been selected upon grounds constituting a valid distinction for legislation and not arbitrarily determined may apply a different rule without being subjected to the charge of special legislation. Cases which have sustained legislation providing for the recovery of attorney's fees by one party to litigation against another are: *Peoria, Decatur and Evansville Railway Co.* v. *Duggan*, 109 Ill. 537, in an action for injury to stock caused by failure of a railroad company to fence its track; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Hamilton*, 200 Ill. 633, in an action for damage by fire caused by failure of the railroad company to keep its right of way clear of dry grass and other combustible material; *Vogel* v. *Pekoc*, 157 Ill. 339, in an action for the recovery of wages; *Sanitary District* v. *Bernstein*, 175 Ill. 215, in condemnation proceedings where the petitioner abandons the proceeding; *Sanitary District* v. *Ray*, 199 Ill. 63, and *Gentleman* v. *Sanitary District*, 260 id. 317, in actions against a sanitary district for damages to real estate caused by overflow. In the last case it was held that section 19 of the Sanitary District act, which authorizes the recovery of attorney's fees by a plaintiff suing for damages to his land overflowed or otherwise damaged by the construction of the channel of the sanitary district, did not violate section 2 of article 2 of the State constitution or section 1 of the fourteenth amendment to the Federal constitution because it deprived the district of its property without due process of law or of the equal protection of the law, and did not violate section 22 of article 4 of the State constitution by granting a special privilege

to any corporation, association or individual. The clause of section 22 of article 4 which prohibits the enactment of special legislation in all other cases than those specifically enumerated in which a general law can be made applicable has been frequently held to be addressed to the General Assembly alone, whose action on such other subjects is not subject to judicial review as to whether a general law could be made applicable or not. *Sanitary District* v. *Ray, supra.*

Section 12 of the Injunction act was first enacted in this State in 1861. (Laws of 1861, p. 133.) It has been considered by the courts in a large number of cases. Many of them have come to this court, among which are *Ryan* v. *Anderson*, 25 Ill. 372, *Misner* v. *Bullard*, 43 id. 470, *Landis* v. *Wolf*, 206 id. 392, and *Marks* v. *Columbia Yacht Club*, 219 id. 417. The constitutionality of the section has never before been questioned in any particular. The objections made to it are not tenable.

The appellants contend that the decree is not sustained by the evidence. After the making of the contract of settlement alleged in the bill, Keller and H. P. Harrington formed a partnership in business as bridge engineers, having their headquarters in the city of Chicago. The bill was based on the theory that Keller and Harrington, together with Soule and Aszman, were about to violate the contract of settlement, and that with them were associated in the same purpose John Lyle Harrington, Ernest E. Howard and Louis R. Ash, who were consulting engineers and were partners under the firm name of Harrington, Howard & Ash, having offices in Kansas City and New York. John Lyle Harrington was not related to H. P. Harrington. On December 10, 1923, the Department of Railways and Canals issued invitations for proposed designs for movable bridges Nos. 3, 4 and 13 over the Welland ship canal. John Lyle Harrington requested Keller to come to Kansas City, and an agreement was made whereby Keller undertook to submit plans on bridges Nos. 3 and 13, with an option on No. 4.

Keller prepared the plans on bridges Nos. 3 and 13, which were submitted to the department by Harrington, Howard & Ash, naming Keller as associate engineer. The plans for bridge No. 3 were accepted. This bridge requires an 80-foot span. The department decided to proceed also with bridges Nos. 1, 8 and 20, which required the same span, and authorized the preparation of plans and specifications for those bridges of the same design as those approved for bridge No. 3. In December, 1924, Harrington, Howard & Ash entered into an agreement with Keller whereby he agreed to furnish by February 10, 1925, designs, plans, specifications, computations and estimates of quantities for bridges Nos. 3, 1, 8 and 20 for the Department of Railways and Canals. The injunction writ was served on Keller and H. P. Harrington on February 7, 1925, and on February 10 Keller employed the law firm of Burry, Johnstone & Peters to attend to the matter for him. F. Bruce Johnstone, of that firm, examined the bill and its exhibits and had many long conversations with Keller, informing himself of the facts in regard to the relations between the Scherzer Rolling Lift Bridge Company and the Canadian authorities with reference to the Welland canal in September, 1922, and the relations between Keller and the Kansas City firm. He examined the proceedings in a previous litigation between Keller and the Scherzer Rolling Lift Bridge Company, referred to as the Prairie Siding litigation. After due consideration Johnstone advised Keller that it would be necessary to have a conference with John Lyle Harrington before the argument for the dissolution of the injunction. John Lyle Harrington was in California, and it was therefore arranged that Johnstone, with Keller, should meet Harrington in Kansas City the day of his return. This was done. The day was spent there in conference with Harrington, his partner and his counsel. An affidavit was prepared and executed and that night Johnstone returned to Chicago. He argued the motion for dissolution of the injunction on

March 10 and the injunction was dissolved. The time spent by him on this work was a little over eleven days, and his junior partner, William Burry, Jr., spent six days' time on the same work. It was shown that the usual, customary charge for the services rendered by Johnstone would be $100 a day and that it was a fair and reasonable charge, and that $40 or $50 a day would be a fair and reasonable charge for the work of Burry. Johnstone's disbursements for his trip to Kansas City were $45.54, telegrams $4.72, and the expenses of Keller to Kansas City and return were $49.90. After the dissolution of the injunction Keller and Harrington employed five extra draftsmen to get the plans out as rapidly as possible, at the cost of $78, which was included in the damages assessed by the court.

The appellants argue that there is no evidence of a necessity for the employment of two attorneys, and that the charge for attorney's fees is therefore unreasonable. The employment was of a single firm composed of several attorneys. No duplication of work was shown.

It is contended that no distinction is made in the evidence between services performed exclusively on the motion to dissolve and services performed in the general defense of the suit, and it is argued that the preparation of the answer, which was part of the services testified to, was done in the general defense of the cause and its preparation was not necessary on the hearing of the motion to dissolve the injunction. It is further said that the evidence does not show the amount Johnstone charged for his trip to Kansas City, and it is not shown that the trip to Kansas City was reasonably necessary. The motion to dissolve was heard on the bill, anwers and exhibits and on affidavits. The services to which Johnstone testified related to the motion to dissolve the injunction and were necessary to procure its dissolution. The fact that the filing of the answer and preparation of the motion to dissolve also simplified the preparation for the defense of the cause on the merits was

not material. (*Marks* v. *Columbia Yacht Club, supra.*) Where an injunction is merely ancillary to the principal relief sought by the bill and its dissolution is only incidental to the defense made, counsel's fees incurred in defending the suit generally cannot be assessed as damages, but where they are necessarily incurred in procuring a dissolution of the injunction they may be allowed as damages. *Landis* v. *Wolf, supra; Dempster* v. *Lansingh,* 234 Ill. 381.

The bill which the attorneys rendered to Keller for their services, which was admitted in evidence, it is objected was not competent evidence against the complainants. It was not evidence either of the services rendered or their value, but competent evidence on these questions was introduced, and it will be presumed the court disregarded whatever was incompetent.

It is claimed on the part of the appellants that Johnstone's testimony is entitled to but little weight because he was attorney of record appearing in the cause. On the hearing of this suggestion of damages the defendants introduced no testimony and there was therefore no controversy in the evidence.

Objection is made to the allowance for the expenses of the trip to Kansas City and for the cost of telegrams on the ground that the evidence did not show that the trip was necessary, or if it was, that both Keller and Johnstone should go, and that there is no evidence that the charges were reasonable. It is fairly to be inferred from the evidence that an interview with John Lyle Harrington was necessary before the hearing of the motion to dissolve; that both Keller and his attorney should be present at the interview; that the question of time was important. The expense charged was for the amount actually paid out, and none of the evidence was brought in question either by contradiction or cross-examination.

The testimony as to the item of $78 is that it was expended to get the plans out as rapidly as possible after the

dissolution of the injunction. It does not appear why the plans had to be completed in extraordinary haste or at an extraordinary expense or how the injunction made it cost more to complete them. The plans were due in Kansas City, under the contract, by February 10. The injunction was issued on February 7. After the dissolution of the injunction the plans were completed and delivered in Kansas City on March 21. The evidence does not show that the $78 paid to the draftsmen was an additional expense caused by the injunction.

It is contended that Keller employed the attorneys and that no damages were shown by Harrington. Keller and Harrington were partners. The injunction was against both of them. The business was the business of the partnership, in which Harrington was as much interested as Keller, and the assessment was properly made in favor of the two jointly.

It is objected that the order directs the complainants, or some of them, to pay to the defendants, or their solicitors of record, the damages. The order is not in correct form either as to the complainants who are ordered to pay or the persons to whom payment is to be made, though, perhaps, the error is too slight and technical to require a reversal, but for the erroneous inclusion of the item of $78 for the extra draftsmen the decree will be reversed and the cause remanded to the superior court, with directions to enter a decree in favor of the appellees, against the appellants, for $1075.16 and costs. The appellants will pay three-fourths of the costs of this court and the appellees one-fourth.

*Reversed and remanded, with directions.*