Eugene A. BOWLIN and Ernie Ann
Bowlin, Appellants,

v.

Tom ALLEY and Mac
McDonald, Appellees.

No. 61099.

Supreme Court of Oklahoma.

May 2, 1989.

**366**

William O. Fields, Tulsa, for appellants,

Matthew D. Henry, Pawnee, for appellees.

PER CURIAM:

This is an action brought by Eugene and Ernie Ann Bowlin, husband and wife, (appellants) against Tom Alley and Mac McDonald (appellees) to restrain them from interfering with appellants' right of ingress and egress across a certain access road leading to appellants' driveway and home. While appellants initially alleged in their petition the roadway in question was located on appellees' property, they amended their petition to conform to the proof that such property was purportedly owned by Dale and Dorothy Watt, appellees' predecessors in title. Appellees argued they acquired title to the property on which the access road was constructed at the time the Watts conveyed certain property which adjoins the access road on the east. Appellants' theories for relief asserted at trial were an easement by way of necessity and an irrevocable license. The trial court issued a temporary injunction against appellees; however, at the hearing it vacated the temporary injunction, denied appellants' request for permanent injunction and quieted appellees' title against all claims by appellants. At a subsequent hearing set by the court evidence was received concerning damages to appellees as a result of the issuance of the temporary injunction. The trial court entered a judgment against appellants in the amount of $5,809.75 as reasonable attorney's fees which had been initially requested by appellees in their answer to appellants' petition.

Appellants appealed urging the trial court's judgment is based upon insufficient evidence to support its findings of fact and resulting judgment. Appellants further contended the trial court erred in awarding appellees' attorney's fees contrary to 12 O.S. § 1392 and based upon insufficient evidence. Also argued was the trial court erred in relying upon § 1392 in that it is unconstitutional as violative of appellants' right to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 2, §§ 2 and 6 of the Oklahoma Constitution. On review by the Court of Appeals, Division 4, the trial court was affirmed. Appellants sought certiorari with this Court which was previously granted. On certiorari appellants now contend they were deprived of their due process rights because both the trial and appellate courts relied upon evidence submitted after trial. In addition, they assert the Court of Appeals erred in concluding they had no standing to attack the constitutionality of § 1392. It is further urged such statute unconstitutionally violates their rights of equal protection.

The evidence discloses that in 1967, the Watts constructed a private access road over the eastern half of a formerly unimproved, dedicated street (Avenue C) that separates property now owned by appellees and appellants. In 1974, the Watts conveyed a portion of their property west of Avenue C to appellants. Appellants utilized the access road to haul materials to build their home and subsequently as the only route to their driveway and garage. In 1980, appellants, real estate agents, in the process of selling other property in the area and pursuant to a title requirement, sought and obtained the Watts' cooperation to obtain vacation of Avenue C. After the vacation of Avenue C, appellants continued their use of the access road. In August of 1982, the Watts, by quit claim deed, conveyed a portion of their property east of Avenue C to appellees. The deed specifically made reference to various alleyways

and a right-of-way but was silent with respect to the eastern half of vacated Avenue C. Mr. Watts testified that subsequent to the conveyance he built a fence and gate down the center line of Avenue C. After the time of trial, appellees' counsel attached a correction quit claim deed dated June 30, 1983, to their response brief which specifically made reference to the eastern half of Avenue C.

This action arose after appellees provided appellants with a key to the lock on the gate to the access road along with a letter advising appellants that at the end of a sixty-day period the locks would be changed and they would have to have an alternative means of entry to their land.

The issues presented on certiorari are: (1) Whether appellants' due process rights were violated, (2) Whether appellants have standing to challenge the constitutionality of 12 O.S.1981 § 1392 and (3) Whether the attorney's fees provision in § 1392 violates the equal protection clause of the United States Constitution, Amendment XIV, and Oklahoma Constitution, Article 2, §§ 2 and 6. We answer the first and third question in the negative and question two in the affirmative for the reasons stated below.

## I

■ We first address appellants' argument concerning the denial of their due process rights. They urge the trial court erroneously relied on the correction deed which was improperly placed into evidence *after* trial. It is contended they were deprived of their Fourteenth Amendment right to cross-examine the details surrounding the correction deed. Appellants' position is appellees had no greater legal right to the use of the access road than appellants prior to or during the trial because ownership was in the Watts as reflected by the first quit claim deed. An examination of the transcript clearly reveals that before

the close of the trial the trial court ruled the original quit claim deed included the strip of land on which the access road is situated, even though not specifically described therein. Consequently, we cannot find the trial court relied on the correction deed in ruling on the title issue. We conclude the trial court did not utilize evidence improperly submitted, if any; thus, the trial court did not deny appellants' right to cross-examine thereon. Furthermore, there was sufficient evidence to show the omission of Avenue C in the deed was inadvertent.

■ In any event, under 11 O.S.1981 § 42–113(C) (amended 1984),[1] the eastern half of vacated Avenue C reverted to the Watts as a result of the vacation proceeding. Accordingly, the Court of Appeals correctly found appellants have no claim or right to such property to entitle them to injunctive relief.

## II

■ The appellate court found appellants lacked standing to attack the constitutionality of 12 O.S.1981 § 1392. Its determination is based on the erroneous assumption that appellants' challenge was brought on the ground the statute "may conceivably be applied unconstitutionally to deprive others of attorney's fees, in situations not before the Court." To the contrary, the subject of appellants' challenge is the statute unfairly requires them to pay the prevailing defendant attorney's fees; whereas, if they had prevailed, they would be denied attorney's fees. Therefore, they are challenging the statute in their own behalf and not on behalf of third parties. Appellants have a personal stake in the outcome of the tendered controversy and hence have standing to challenge the statute. *State ex rel. Cartwright v. Okl. Tax Com'n,* 653 P.2d 1230 (Okla.1982); *Independent School Dist. No. 9 v. Glass,* 639 P.2d 1233,

---

1. 1.11 O.S.1981 § 42–113(C) (amended 1984) then provided:

"When any public way or easement shall be vacated, the same shall revert to the owners of real estate adjacent thereto on each side, in proportion to the frontage of the real estate, except in cases where such public way or easement shall have been taken and appropriated to public use in a different proportion, in which case it shall revert to adjacent lots or real estate in proportion as it was taken from them or dedicated."

1237 (Okla.1982). Accordingly, we find the Court of Appeals erred in concluding appellants have no standing to challenge the constitutionality of § 1392.

### III

We next consider the constitutionality of 12 O.S.1981 § 1392. The challenged provision reads:

> "Unless otherwise provided by special statute, no injunction shall operate until the party obtaining the same shall give an undertaking, with sufficient surety, to be approved by the clerk of the court granting such injunction, in an amount to be fixed by the court or judge allowing the same, to secure the party injured the damages he may sustain, including reasonable attorney's fees, if it be finally decided that the injunction ought not to have been granted."

■ Appellants contend the statute is unconstitutional because it does not provide for the reciprocal awarding of damages and attorney's fees for prevailing parties in injunction actions where the trial court refuses to grant a temporary injunction and later determines that it should have issued a temporary injunction pending the litigation. They assert the statute violates the equal protection clause of the Fourteenth Amendment of the United States Constitution, and the Okla. Const. art. 2, §§ 2 and 6, which provides for ready access to the courts and administration of justice without prejudice. The equal protection clause guarantees that those who are similarly situated be similarly treated. The Constitutional safeguard of equal protection does not require things which are different in fact to be treated in law as though they were the same. *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124, 1128 (1940).[2] Yet, this Court notes the caveat that when the legislature does dis-

tinguish persons as dissimilar, or dissimilarly situated, it must be upon some permissible basis in order to withstand constitutional challenge.[3] Here, it is clear that the litigants in a temporary injunction suit are not similarly situated. The temporarily enjoined party has been deprived of a legal right prior to final determination on the merits. The statute would compensate the enjoined party for his damages occasioned by that temporary deprivation if the deprivation proved to be erroneous. On the other hand the party seeking injunction, even if he ultimately prevails, has not at any time suffered a pre-judgment deprivation of any right that was legally his. That party cannot incur any injury requiring compensation in damages prior to his establishing a right to the injunction, a right that is recognized in law only upon merits adjudication. He cannot successfully complain that the statute treats him unfairly, because the parties not being similarly situated may thus be treated differently.

Addressing our earlier noted caveat, equal protection does not prohibit the government from classifying persons if the classification distinguishes persons as dissimilar upon some permissible basis which is not invidiously discriminatory. For example, the courts will strictly construe legislation that treats members of a suspect classification differently from members of a nonsuspect classification. Here, we have no suspect classification. The subject statute applies equally to all persons obtaining a temporary injunction regardless of gender or race. For equal protection purposes, legislation may not be arbitrary, irrational, and must be related to a legitimate purpose.[4]

The purpose of § 1392 is to provide a bond when a temporary injunction is issued to insure that a party who has been enjoined *without benefit of a trial on the*

---

**2.** *Thayer v. Phillips Petroleum Co.,* 613 P.2d 1041 (Okla.1980) is not dispositive since it is the effect of a denial of an *extraordinary discretionary writ* which is here considered and *not* the denial of a *fundamental right,* such as equal access to the court.

**3.** *Kirk v. Board of County Comm'rs.,* 595 P.2d 1334, 1336 (Okla.1979) (citing *Ferguson v. Skrupa,* 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963) and *McLaughlin v. Florida,* 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964)).

**4.** See FN 3.

*merits* will be compensated for damages sustained as a result of its issuance if it is later determined that the injunction ought not to have been issued. To this end, *Oklahoma Cotton Growers' Ass'n v. Groff,* 135 Okl. 285, 275 P. 1032, 1034 (1929) is enlightening wherein this Court stated that attorneys' fees, as an element of damages, is no more a penalty than any other actual damages. "[D]amages and not penalties are the essence of the injunction bond." *Id.*

There is divergent statutory and judicial authority among the several states and federal jurisdictions regarding whether attorneys' fees are a proper element of damages recoverable by the wrongfully enjoined party. The minority and federal jurisdictions deny the recovery of attorneys' fees as an element of damages sustained by the wrongfully enjoined party.[5] It appears that the majority of states allow the recovery of attorneys' fees either by statute or by judicial opinion.[6] In 1905 the legislature sitting for the Territory of Oklahoma amended § 1392's predecessor to embrace attorneys' fees as an element of damages.[7] Amended several times after statehood, our legislature has left § 1392's attorneys' fees feature intact and the constitutionality of this section has not heretofore been questioned. Though *Groff* is instructive regarding the compensatory purpose of § 1392, the reasoning supporting the majority view has been explained by our sister states. It is reasoned that a temporary injunction, the extraordinary remedy characterized as the strong arm of equity, deprives the enjoined party of a right, even though temporarily, and puts him under a restraint prior to an adjudication on the merits. In order to remove the restraint the enjoined party must procure the services of an attorney and in the event the temporary injunction was wrongfully issued the expenditure of attorneys' fees to remove the restraint is a part of the damages sustained by reason of its issuance. See Annot. 164 A.L.R. 1088, 1089 and cases cited therein.

Unlike the usual course of law which proceeds upon inquiry and adjudicates only after a hearing, the courts issue temporary injunctions summarily prior to a hearing on the merits. Thus in an early Florida case the court stated that:

> "[i]t seems just and right that where a party asks the interposition of the power of the courts, in advance of a trial on the merits of the cause, to deprive the defendant of some right ... that if on investigation it is found that plaintiff had no just right either in the law or the facts to justify him in asking and obtaining from the court such a harsh and drastic exercise of its authority, that he should indemnify the defendant ... for all damages he might sustain and that reasonable counsel fees ... are properly a part of his damage." *Wittich v. O'Neal,* 22 Fla. 592, 599 (1886).

*Wittich* was followed in more recent times in *Roger Dean Chevrolet, v. Painters, Decorators & Paperhangers of Am, Local No. 452,* 155 So.2d 422 (Fla.App.1963).

The state of Illinois also follows the rule that attorneys' fees are a proper element of damages sustained by the wrongfully enjoined party. *Scherzer v. Keller,* 321 Ill. 324, 151 N.E. 915 (1926), *Buzz Barton & Assoc. v. Giannone,* 108 Ill.2d 373, 91 Ill. Dec. 636, 483 N.E.2d 1271 (1985). In *Scherzer* and *Buzz Barton,* a statute construed as authorizing the award of attorneys' fees to the prevailing wrongfully enjoined party withstood constitutional challenge. In accord with *Scherzer,* the court in *Buzz Barton* stated:

> It is this extraordinary characteristic of temporary restraining orders and preliminary injunctions which distinguishes them from other types of litigation and justifies holding the moving party liable

---

**5.** See *Oklahoma Cotton Growers' Ass'n v. Groff,* 135 Okl. 285, 275 P. 1032 (1929); Annot. 164 A.L.R. 1088, 1089 and 1111 (1946); 43A C.J.S. *Injunctions,* § 339 (1978).

**6.** See *Oklahoma Cotton Growers' Ass'n v. Groff,* 135 Okl. 285, 275 P. 1032 (1929); Annot. 164 A.L.R. 1088, 1089 (1946); 43A C.J.S. *Injunctions,* § 339 (1978); 1 H. Joyce, *Injunctions* § 203 (1909).

**7.** 1905 Territory of Ok.Sess.Laws p. 319 amending 1903 Wilson's Rev. & Annot. 135 Okl. 285, 275 P. 1032, 1034 (1929).

for all damages if the preliminary injunction or temporary restraining order is later found to have been wrongfully issued. To allow a party, before a dispute is resolved on the merits, to interfere in the activities of another without being held liable for damages caused by the interference, if proved to be in error, would be inequitable and would invite spurious litigation. Holding the plaintiff liable for all damages properly proved to have been caused by the wrongful issuance of the preliminary injunction is justified and does not violate the plaintiff's right to equal protection.

\* \* \* \* \* \*

By seeking the extraordinary remedy of a preliminary injunction, the plaintiff was able to receive the relief it sought without having to prove its case on the merits. It is not unreasonable for the legislature to make the granting of such extraordinary relief conditional upon the plaintiff's being held liable for all damages if the relief is later found to have been wrongfully issued. *Buzz Barton* 91 Ill.Dec. at 640–41, 483 N.E.2d at 1275–1276 (citations omitted).

As an extraordinary equitable tool, temporary injunctions are issued in summary proceedings wherein the burden of proof is less stringent than the standard required in proceedings on the merits. Prior to a final determination by the courts, the enjoined's rights are abridged and he is burdened for an act occasioned by his adversary. On the other hand, the moving party receives a benefit pending final resolution by the court. In fact, the unscrupulous may find it economically prudent and profitable to enjoin and restrain another if but temporarily. See Metzer and Friedlander, "The Preliminary Injunction: Injury without Remedy?" 29 Bus.Law 913 (1974). Historically, neither law nor equity furnished any remedy to the wrongfully enjoined. 1 H. Joyce, *Injunctions* § 158 (1909).

The injustice which so often resulted to the defendant from hasty orders of injunction, led the courts to adopt measures of indemnity and protection for those who were enjoined, and to require bonds from the plaintiff for the payment of damages to defendant in case of a final decision averse to the injunction. *Id.*

In light of the foregoing, the legislative purpose in providing for the unilateral award of attorneys' fees is readily apparent. Including attorneys' fees as an element of damages sustained compensates the wrongfully enjoined and deters frivolous and meritless claims to the prejudgment equitable remedy of temporary injunctions. Furthermore, the legislature is justified in treating the litigants to a temporary injunction suit differently in order to eliminate an undue advantage held by one over the other. Annot. 73 A.L.R.3d 515, 526 (1976). The challenged statute distinguishes the litigants as dissimilar upon a permissible basis because the purposes of 12 O.S.1981 § 1392, as set forth above, are not arbitrary, irrational and are related to a legitimate purpose. We therefore hold that 12 O.S.1981 § 1392 does not violate the equal protection clause of the Fourteenth Amendment of the United States Constitution because the litigants are distinguished as dissimilar upon a permissible basis.

■ Lastly the appellant contends that 12 O.S.1981 § 1392 deprives the party who obtains a temporary injunction of equal access to the courts in violation of Art. 2 § 6 of the Oklahoma Constitution. Appellant's position is without merit. The challenged statute does not preclude a complainant from bringing a suit for permanent injunction and thus forego the assessment of attorneys' fees. Access to the courts is not deprived. We therefore hold that 12 O.S.1981 § 1392 does not violate one's state constitutional right to access to the courts.

HARGRAVE, C.J., and LAVENDER, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, V.C.J., and SIMMS, J., concur in parts I & II; concur in result in part III.

HODGES and KAUGER, JJ., concur in parts I & II; dissent from part III.