1999 OK 69

Thomas W. CHILDS, Jr., Appellant,

v.

STATE of Oklahoma, ex rel., DE-
PARTMENT OF PUBLIC
SAFETY, Appellee.

No. 87,561.

Supreme Court of Oklahoma.

July 13, 1999.

Rehearing Denied Sept. 16, 1999.

Roger R. Scott Tulsa, Oklahoma James H. Heslet Tulsa, Oklahoma, For Appellant.

Michael O'Brien Oklahoma Department of Public Safety, Oklahoma City, Oklahoma, For Appellee.

SIMMS, J:

¶1   Thomas Childs' driver's license was revoked in an administrative proceeding because the results of a breath test administered to him, on July 10, 1995, while he was in control of an automobile showed his blood alcohol level to be .10 or greater.   A person testing at this level is considered legally intoxicated and pursuant to statute no other evidence was offered at the hearing to revoke Childs' license.

¶2   The test was performed by the Broken Arrow Police Department in Tulsa County, on a breath analysis instrument called an intoxilyzer, an automated analyzer approved by the Board of Tests for Alcohol and Drug Influence (the Board).   When the intoxilyzer is used a second sample for later independent testing is not taken.   In accordance with the Board's regulations, a suspect driver's breath is tested twice within a short period, but no sample is retained.   This procedure was followed in Childs' case.

¶3   When law enforcement personnel conduct a blood alcohol test on a breathalyzer machine, or by blood, urine or saliva collection, a second sample is automatically maintained for a prescribed time period to allow the alleged intoxicated person opportunity for a second test at an independent lab.

¶4   Childs' appealed the administrative revocation of his license to the district court, claiming unequal treatment under the law, as he was not provided a second sample for independent testing.   The case was submitted on an "Agreed Statement of Facts".   The district court affirmed the administrative revocation.

¶5   The Court of Civil Appeals then reversed and remanded the cause, directing the administrative revocation be set aside.   The Court of Civil Appeals held that 47 O.S. Supp.1992 § 752(F) violated Oklahoma constitutional norms of due process and equal protection, when all other forms of testing, except the intoxilyzer, allow for an automatically taken second sample.

¶6   The record provided by Childs is insufficient to support a determination of the constitutional challenges alleged with regard to 47 O.S. Supp.1992 § 752(F).   As a result, the opinion of the Court of Civil Appeals is vacated and the administrative revocation of Childs' license is affirmed.

¶7   The law requires equal treatment of those things which are in fact equal. *United States Constitution*, Amendment XIV and *Oklahoma Constitution*, Art. 2, §§ 2 & 6; *Bowlin v. Alley*, 1989 OK 66, 773 P.2d 365, 368 (citing *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124, 1128 (1940)); *Brown v. Lillard*, 1991 OK 74, 814 P.2d 1040, 1041 (citing *Kirk v. Bd. of County Comm'rs*, 1979 OK 80, 595 P.2d 1334, 1336).   However, the law will not presume two things to be equal.   The onus is on the party urging the violation of the Equal Protection Clause.   It is this party who must present the court with evidence that unequal treatment is being exacted upon persons who are equal and therefore required to be treated the same. *Bowlin v. Alley*, 1989 OK 66, 773 P.2d 365, 368 (citing *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124, 1128 (1940)); *Brown v. Lillard*, 1991 OK 74, 814 P.2d 1040, 1041 (citing *Kirk v. Bd. Of County Comm'rs*, 1979 OK 80, 595 P.2d 1334, 1336).   "Under equal protection analysis, legislative enactments ordinarily are presumed to be valid." *Fair School Finance Council v. State*, 1987 OK 114, 746 P.2d 1135, 1143 (citing *McGowan v. State of Maryland*, 366 U.S. 420, 424–

426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)); *Wilson & Co. v. Hickey*, 186 Okla. 324, 97 P.2d 564, 566 (1940) ("A presumption of constitutionality is raised by the mere enactment of a statute."). Childs has not offered this Court a record which could permit us to overcome this presumption.

¶ 8 Childs' entire argument is premised upon the assumption that all tests to conduct blood alcohol level are equal and therefore any safeguards afforded in one testing procedure must be afforded in all the testing methods, including the collection of a sample for independent testing. However, Childs does not support this assertion with evidence in the record. While Childs makes some reference to the sameness of the two breath testing methods (intoxilyzer and breathalyzer) in his briefs, there is nothing by way of testimony, stipulation or exhibits to support the conclusory statements made in the briefs.

¶ 9 This Court cannot presume the intoxilyzer and breathalyzer are equal machines and therefore cannot assume individuals tested with the different machines are equal and entitled to the same testing process. In fact, the United States Supreme Court's decision in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), indicates the intoxilyzer is extremely accurate, drastically reducing the chances that an independent test would prove exculpatory:

> In all but a tiny fraction of cases, preserved breath samples would simply confirm the Intoxilyzer's determination that the defendant had a high level of blood-alcohol concentration at the time of the test. Once the Intoxilyzer indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory than exculpatory evidence.

*Trombetta*, 467 U.S. at 489, 104 S.Ct. at 2534. The U.S. Supreme Court makes several references to malfunction protections built into the intoxilyzer testing procedure, including the analysis of two closely correlated breath samples and systematic purging of the machine to ensure no alcohol remains from a previous test. *Id.*

¶ 10 In the agreed statement of facts, Childs in no way contests the accuracy or performance of the test given him. Childs asserts that he did not stipulate to the correctness of the results. However, he did stipulate to the following:

> Childs does not know whether the procedure used by the Broken Arrow police, in operating the Intoxilyzer or the maintenance of the Intoxilyzer were in conformity with board regulations. However, for purposes of this appeal, Childs will not offer any evidence that said procedures were not followed and stipulates that if called, the Broken Arrow police officers would testify the proper procedures and maintenance [sic] were followed.

In failing to object in any manner to the procedure, performance or accuracy of the intoxilyzer, Childs in effect conceded the accuracy and performance of the test.

¶ 11 "The equal protection clause of the Fourteenth Amendment of the Federal Constitution [as well as Oklahoma's own equal protection provisions in our due process clause are] not to be construed as introducing a factitious equality without regard to practical differences that are best met by differences of treatment." *Wilson & Co. v. Hickey*, 186 Okla. 324, 97 P.2d 564, 566 (1940). We can only assume, without evidence to the contrary, that the practical differences in the two breath testing processes account for the differences in their statutory treatment. *Id.*

¶ 12 Given the strong presumption in favor of the constitutionality of 47 O.S.1992 Supp. § 752(F), the marginal record provided upon which this Court could evaluate the machine(s) in question and the affirmative statements from the United States Supreme Court extolling the reliability of the intoxilyzer, this Court simply cannot engage in the constitutional examination proposed by Childs.

¶ 13 In addition to Childs' failure to establish and support an assertion of equality between the two testing methods, Childs also fails to establish the prejudice exacted upon him through the non-collection of an independently testable sample.

Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta,* 467 U.S. 479, 488–489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); *See also City of Las Vegas v. O'Donnell,* 100 Nev. 491, 686 P.2d 228, 230 (1984) (defendant required to demonstrate prejudice in loss of breath samples). Childs has provided this Court with nothing which would indicate an independent sample would have had exculpatory value. This Court can only assume, based on the Supreme Court's discussion and having nothing to counter such, that any independent test would have likely proved inculpatory and not exculpatory. *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534. In addition, Childs made no effort to demonstrate the inadequacy of other means available to him for challenging the accuracy of the intoxilyzer. Childs could have looked for and presented evidence of faulty calibration, possible radio wave interference which could cause the machine to measure incorrectly, or operator error of some kind. See *Id.* at 489–90, 2534–35. There is no evidence Childs searched for these or any other testing mis-steps. Finally, Childs, like all other Oklahoma drivers suspected of driving under the influence, was perfectly at liberty to request any additional test be administered to determine the concentration of his blood alcohol level. 47 O.S. Supp.1995 § 751(E). These opportunities were missed as a result of Childs' own neglect; having not acted upon them, Childs has failed to carry the burden that he was either prejudiced or had no other means available to obtain comparable evidence.

¶ 14 As the record is insufficient to allow this Court opportunity to engage in the constitutional analysis proposed. We affirm the administrative revocation of Childs' license.

¶ 15 CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, JUDGEMENT OF THE TRIAL COURT AFFIRMED.

HARGRAVE, V.C.J., and LAVENDER, SIMMS, KAUGER, and WATT, JJ., concur.

WILSON, J., concurs in part, dissents in part.

SUMMERS, C.J., and OPALA, J., dissent.