## OKLAHOMA COTTON GROWERS' ASS'N et al. v. HOOVEN.

No. 18711.    Opinion Filed Oct. 2, 1928.

Rehearing Denied Dec. 24, 1928.

Hart & Edwards, for plaintiffs in error.

Sigler & Jackson, for defendant in error.

LEACH, C.    This is an action by N. M. Hooven against Oklahoma Cotton Growers Association and United States Fidelity & Guaranty Company to recover on an injunction bond. Judgment was had in the district court of Carter county in favor of the plaintiff, and defendants appeal. The parties will be referred to as they appeared in the trial court.

In March, 1921, plaintiff, Hooven, entered

into a written agreement with Oklahoma Cotton Growers Association, in which he agreed to sell and deliver to the association all cotton raised by him during the years 1921 to 1927, inclusive. In 1924 the association filed suit against Hooven alleging he had violated the contract, and prayed judgment against him for damages, also for specific performance and an injunction to prevent a further and future breach of the agreement. On October 7, 1924, a temporary injunction was issued in that cause, enjoining the further sale of cotton by the defendant in that action. On October 23rd a motion to dissolve the injunction was presented and overruled; thereafter demurrer was filed to the petition and later an answer.

Upon a trial of the issues in that cause, a verdict and judgment was rendered in favor of the association, for the sum of $1 damages and the temporary injunction made permanent, from which judgment an appeal was perfected to this court, which resulted in a reversal of the judgment, with directions to dismiss the action. N. M. Hooven v. Oklahoma Cotton Growers Association, 118 Okla. 238, 247 Pac. 39. This action is to recover upon the injunction bond given in that cause in 1924. Upon a trial of this cause a verdict and judgment was rendered in favor of plaintiff for the sum of $670 as damages arising from the depreciation in the price or value of the cotton held by plaintiff at the time of the issuance of the injunction, and for the further sum of $1,000 as attorney fees; a judgment for the total sum of $1,670 was rendered in favor of plaintiff. The damages allowed plaintiff by reason of depreciation in the value of his cotton is challenged by the defendants upon two grounds; that is, that' such loss or damage suffered by plaintiff was not caused by reason of the issuance of the injunction, but by reason of the acts of the plaintiff himself, or the First National Bank of Ardmore, who held a mortgage upon the cotton, and that the measure of damages based upon the decline in value of the cotton between the date of the issuance of the injunction and the date of the sale of the cotton as instructed by the court is incorrect. The evidence discloses that, on the date of the issuance of the injunction, the plaintiff had on hand in a warehouse 67 bales of cotton, which, according to his testimony, he had an offer to sell, came in to sell, and intended to sell on that date; that the reasonable market value on that day was 26c per pound; that the cotton was mortgaged; that

he had previously sold about 28 bales of that year"s crop; that after the injunction was granted, the bank which he owed and which held a mortgage on the cotton, took and sold it. In answer to the question:

"Q. How did they happen to sell that cotton?" he stated, "A. I told them they had tied me up, and I wanted to pay them, and I said, 'There it is, go ahead, I can't.' "

An officer of the bank testified that the bank held a mortgage on the cotton, and that they sold the same with the consent of the plaintiff. The testimony further discloses there was a gradual decline in cotton prices, and that the cotton was sold on the 27th day of October, 1924, at 23¼c per pound. It is argued by the defendant that the plaintiff, Hooven, did not exercise control over the cotton at the time the injunction was issued, nor at the time the cotton was sold; that the bank, the mortgagee, sold the cotton when it thought best to sell it, and that the injunction had no effect in the matter of the sale of the cotton, or if the bank did not exercise or have absolute control over the cotton, then the plaintiff did have and could have had the bank sell and dispose of the cotton on the date that the injunction was granted, the same as he did 20 days later.

In support of such contention, attention is called to the rule that where there is an independent intervening cause which produces the injury, it will be regarded as the proximate cause and not the issuance of the injunction. The plaintiff was deprived of the right to sell his property on the date of the issuance of the injunction, and there was no duty devolving upon him except to use reasonable care to avoid injury or increase of damages.

In the case of Slack v. Stephens (Colo.) 76 Pac. 741, the defendant sought to avoid liability on an injunction bond arising from depreciation in the value of certain corporate stock on the ground that the depreciation arose by reason of the loss and destruction of certain property of the corporation, which loss defendant contended was the proximate cause of plaintiff's loss and not the writ of injunction. The court there said:

"* * * The authorities are that the wrongful act of defendants in securing and having served the writ of injunction, thereby wrongfully preventing plaintiff from selling the stock and realizing its value when it had a value, is the proximate cause of the damage sustained through the failure to sell." Citing a number of cases sustaining the rule.

High on Injunction, vol. 2 (3rd Ed.) sec. 1663, is in part:

"But where an injunction operates to delay the sale of property, real and personal, and pending such delay great depreciation occurs in the value of the property, such loss, being regarded as occasioned by the injunction, may be properly included in estimating the damages incurred."

See, also, Joyce on Injunction, vol. 1, sec. 195, p. 320.

The case of Whitehead v. Cook, 100 Okla. 282, 229 Pac. 254, is cited as sustaining the defendant's contention. That case is not analogous to the instant one, because there the defendant had entirely parted with all title and right to the judgment involved, and clearly suffered no actual loss from restraining its collection. However, the court held defendant entitled to recover nominal damages. In the instant case the title to the cotton was still in the plaintiff, and he was exercising control over the same. Certain other cases are also cited which we do not consider applicable by reason of difference in the facts.

The case of City of Clay Center v. Williamson (Kan.) 100 Pac. 59, is cited as sustaining the contention of defendant that the proper measure of damages was not applied in the instant case. It was held in the Kansas case that the plaintiff was entitled to recover as damages the difference between the value of its bonds on the date of the issuance of the injunction and its dissolution. The rule there announced might be applicable and correct in the instant case had the cotton been held and retained until the injunction was dissolved, but by reason of the intervening acts and difference in the facts, the rule announced is not applicable to the instant case. The rule announced in the Kansas case, supra, is similar to that in the case of Slack v. Stephens, supra, and the case of Osage Oil & Refining Co. v. Chandler (C. C. A.) 287 Fed. 848, 29 A. L. R. 720. Following the next above case reported in 29 A. L. R. will be found a number of annotations relating to damages recoverable on injunction bonds by reason of decline in market value of corporate stock. The court in the Osage Oil & Refining Co. Case, supra, referred to the British case of Mansell v British Linen Co. (1892) 3 Ch. 159, 61 L. J. Ch. N. S. 696, 67 L. T. N. S. 171, the syllabus of which is as follows:

"A plaintiff having instituted proceedings to establish his alleged title to certain shares in a limited company, as against the registered holder of the shares and his mortgagees, obtained an interim injunction, upon the usual undertaking in damages, restraining any dealing with the shares until judgment in the action or further order. Subsequently, but before the trial, the mortgagees applied in the action for leave to sell the shares, but the plaintiff and the registered holder both opposed, and the application was not granted. At the trial the action was dismissed with costs; held, that the measure of damages payable under the undertaking was the difference between the respective prices of the shares at the date of the injunction and at the date of the application for leave to sell."

Applying the rule adopted in the British case, the measure of damages as fixed in the instant case was correct. In the case of McClintock v. Parish, 72 Okla. 260, 180 Pac. 689, which was an action to recover on an injunction bond, it was there held that the plaintiff was entitled to recover the highest market value of certain wheat, which he had been restrained from harvesting, and which had been converted by defendant, at any time between the conversion and the verdict. It was the contention there that, the suit being one upon injunction bond, the measure of damages was the value of the wheat at the time the injunction issued, but the court allowed the highest market price as provided under damages for conversion of property as provided by section 5999, C. O. S. 1921. Apparently the plaintiff would not have suffered the particular damage complained of except for the wrongful issuance of the injunction, and, under the record, we conclude the defendant cannot avoid liability upon the theory advanced.

The judgment is further challenged on the ground that the attorney fees allowed were for the defense of the entire case, and should not be allowed because attorney fees are limited to those necessary and reasonable in procuring dissolution of the injunction and not for defending the entire suit. The evidence relating to the attorney fees is very limited; in fact, the plaintiff gave no testimony whatsoever concerning the payment or incurring liability for attorney fees. Certain questions were propounded by plaintiff's counsel apparently with a view of establishing what would be a reasonable attorney fee under certain conditions. It is now contended by defendant that such questions as propounded related to attorney fees in the defense of the entire action rather than to a dissolution of the injunction.

In view of our further holding herein, under which we find it necessary to reverse this cause for want of proof showing that

the plaintiff paid or became liable to pay attorney fees, we do not here and now attempt to decide whether the fees allowed and testified about related entirely to a dissolution of the injunction or were for defense of the entire action. However, we call attention to the recent case of Oklahoma Cotton Growers Ass'n. v. Salyer, 134 Okla. 55, 272 Pac. 855, in which case it was held that attorney fees were recoverable on an injunction bond similar to the one involved in this action even though such fees be for the defense of the entire action; it being there held that the original action in which the injunction bond was given had for its primary purpose the obtaining of injunctive relief.

The judgment in the instant case is further challenged on the ground that no payment or liability for any attorney fees was alleged or proven. As heretofore stated there was no proof of any character showing that the plaintiff paid any attorney fees, or became liable for the payment of any such fees in the dissolution of the injunction or otherwise. The pleadings introduced in the case show that certain attorneys represented and filed pleadings on behalf of the defendant in the action in which the injunction bond was given, but such proof is insufficient to come within the rule announced by this court in the case of Felkner v. Winningham, 55 Okla. 743, 155 Pac. 248, wherein it was said:

"It is well settled that in an action upon an injunction bond the obligee may recover for attorney's fees and expenses in procuring the dissolution of an injunction, even though such attorney's fees and expenses have not been paid by the obligee at the time of bringing the action upon the bond. But it is equally well settled that if the obligee has not paid such attorney's fees and expenses, he must at least have incurred a liability therefor. Littleton v. Burgess, 16 Wyo. 58, 91 Pac. 832, 16 L. R. A. (N. S.) 49, and note at page 76; Underhill v. Spencer, 25 Kan. 72; Holthaus v. Hart. 9 Mo. App. 1; Martin v. Jamison, 39 Ill. App. 248. at page 257; Packer v. Nevin, 67 N. Y. 550-553; Rees v. Peltzer, 1 Ill. App. 315-325; Fisher v. Tribby, 5 Ill. App. 335-340; Rosenthal v. Boas, 27 Ill. App. 430-432; Schening v. Cofer, 97 Ala. 726, 12 South. 414.

"* * * It will be seen from a consideration of the foregoing authorities that, in order for the defendants in error to recover upon the injunction bond sued on for the expenses claimed in their petition, they must establish by the evidence that they either paid or incurred a fixed and existing liability for such expenses."

In the case of Prager's Paris Fashion v. Seidenbach, 113 Okla. 271, 242 Pac. 260, which involved suit on an injunction bond, the court in referring to attorney fees said:

" * * * The burden of proof was upon the plaintiff to recover such fees and to show by a fair preponderance of the evidence that they were reasonable, and that they were either paid or legally assumed by the party claiming to have been damaged by reason of such fees."

The cause is reversed and remanded, with directions to grant defendants a new trial.

BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.