## OKLAHOMA COTTON GROWERS ASS'N et al. v. GROFF.

No. 18767.    Opinion Filed March 5, 1929.

H. H. Edwards, for plaintiffs in error.

W. B. Garrett, Ross Cox, and A. R. Garrett, for defendant in error.

HALL, C. The basic and general facts in this case are the same as in the cases of Oklahoma Cotton Growers' Ass'n et al. v. Hooven, 134 Okla. 47, 272 Pac. 852, and Oklahoma Cotton Growers' Ass'n et al. v. Salyer, 134 Okla. 55, 272 Pac. 855. There are, however, certain facts and questions involved in the present case which did not enter into the cases above named.

Briefly stated, this was an action to recover on an injunction bond, because of damages sustained by the plaintiff by reason of the defendant, the plaintiff in error herein, having sued out and procured an injunction enjoining the defendant in error from making disposition of certain cotton grown and controlled by him in the year 1924. The injunction was issued on or about November 1, 1924, and it was dissolved by an order of the court, on the defendant executing a dissolution bond in June, 1925, by the plaintiff in the action. Later the suit was dismissed by the plaintiff.

After the injunction was dissolved as aforesaid, the defendant in error, who will be hereinafter referred to as B. P. Groff, or Groff, sold the cotton, the sale of which had been theretofore restrained, for a sum considerably less than the highest market price obtainable for cotton at a date or dates between the issuance of the injunction and the dissolution of the same. In this connection Groff offered satisfactory testimony that during the pendency of the order of injunction he had a bona fide offer to purchase said cotton for the sum of 27 cents per pound, which at that time was the market value of the cotton; and that immediately after the dissolution of the injunction he sold the cotton for the sum of

23¼ cents per pound, which was the market price at that time. Groff offered no testimony to the effect that he would have sold the cotton at the time he was offered 27. cents per pound for same, if the injunction had not been in force.

Plaintiffs in error present numerous and distinct propositions in seeking a reversal of this case. The following propositions, designated below under numbers (1) and (2), have been recently adjudicated adversely to plaintiffs in error, in the cases of Oklahoma Cotton Growers' Ass'n v. Salyer, supra, and Oklahoma Cotton Growers' Ass'n v. Hooven, supra. These cases hold that: (1) The injunction was wrongfully issued; and (2) that the plaintiff was entitled to recover attorney fees for the defense of the entire action, on the ground that an injunction was the principal relief sought, and not merely incidental to the main case.

The following questions presented require a more extended discussion: First. What is the measure of damages for the wrongful issuance of an injunction enjoining the sale of personal property when the damage is based upon a depreciation in the market value of the property during the time the injunction was in force? Second. May an attorney's fee be allowed for procuring the dissolution of an injunction, in the absence of any evidence either that the attorney's fee had been actually paid, or that the defendant had incurred a fixed legal liability therefor?

Regarding the first question, plaintiff in error contends that the measure of damages, if any, is the difference in price at the time the injunction was issued and at the time the injunction was dissolved; or, if the property was acquired after the issuance of the injunction, the difference must be based upon the date of the acquisition of the property and the date of the dissolution of the injunction. Counsel for plaintiffs in error cite authorities from some courts which tend to support their contention. Even though supported by adjudications, the rule contended for is not in accord with reason and justice.

On the other hand, the defendant in error contends, and the trial court so held, that the measure of damages was the same as in conversion. That, also, was error. In support of that contention and the action of the trial court, the defendant in error relies on the case of McClintock v. Parish, 72 Okla. 260, 180 Pac. 689. The rule declared and the point decided in that case is reflected by the fourth paragraph of the syllabus therein, as follows:

"Where M., by injunction wrongfully issued, prevented P. from harvesting his growing wheat, and converted the same to her own use, the measure of damages (under sec. 2875, R. L. 1910, the action prosecuted with reasonable diligence), and the liability on the bond, was the highest market value of the wheat at any time between the conversion and the verdict."

The foregoing statement in the case of McClintock v. Parish is somewhat misleading, because of the commingling of the two wrongful acts, the wrongful issuance of an injunction and the act of conversion. There was a conversion of the property, and notwithstanding the action was brought on the injunction bond, the court in that case measured the damages by the statutory rule fixing the measure of damages for conversion, which was proper under the facts in that case.

The general rule for measuring damages for the wrongful issuance of an injunction is set out in Comp. Okla. Stat. 1921, sec. 415, which in substance is the same as the rule set out with great particularity in Ruling Case Law, vol. 14, p. 482, as follows:

"It may be stated as a general rule that compensation for losses sustained by a defendant which are the actual, natural, and proximate result of the wrong committed by the restraining order, while the latter is alive and operative, is the measure of damages to be assessed against bondsmen, and that any actual damage, suffered by reason of the wrongful suing out of the injunction, is a proper subject of inquiry; no consideration, however, will be given to claimed damages which are so uncertain as to be incapable of ascertainment."

To the same effect is the text of Corpus Juris, vol. 32, p. 469; also 1 Joyce on Injunctions, sec. 191.

Regarding the specific rule applicable to this case, it may be stated that where an injunction operates to delay the sale of personal property having a market value, and pending such delay depreciation occurs in the value of the property, such loss being occasioned by the injunction, the difference between the market value of the property at the time it would have been sold, but for the existence of the injunction, and the market value when the injunction no longer prevented a sale, and interest on the value of the property between the date on which the property would have been sold but for the injunction, and the date on which the injunction was finally discharged,

is the measure of damages. A case bearing considerable analogy to the present case was recently before the Kentucky Court of Appeals, the case being Alcorn Coal Co. et al. v. Justice, 214 Ky. 451. In that case damages were sought on the ground that an injunction had prevented the sale of certain timber. In disposing of the case the court said:

"If he had made a sale of the timber or had a bona fide offer therefor which he was prepared to accept, and which he lost by reason of the injunction, and the market price of timber subsequently declined, this might be shown, his damages being the difference between the contract price at which he would have sold the timber and its market value at the time the injunction was finally discharged."

In the present case the plaintiff wholly failed to prove one of the essential elements for recovery, to wit, that he would have sold the cotton had it not been for the existence of the injunction preventing the sale. Therefore the judgment, for that reason, must be reversed.

As to the second question, which relates to the allowance of an attorney's fee, we think the court committed reversible error in rendering judgment for the alleged attorney's fee without evidence that the fee had been actually paid, or that the plaintiff had incurred a fixed and definite liability therefor. The only evidence in the record relative to the attorney's fee, except the bare fact of employment, was the evidence of an attorney testifying to the effect that a certain sum was a reasonable fee in the case. Directly on the point at issue, this court in the case of Felkner et al. v. Winningham, 55 Okla. 743, 155 Pac. 248, held that:

"In order to recover upon a bond for injunction for expenses and attorneys' fees in procuring its dissolution, it is not necessary that such expenses or attorneys' fees should have been paid, before action on the bond is commenced, but if they have not been paid, those claiming on the bond must have incurred a fixed and existing liability to pay therefor."

The identical question here was recently adjudicated by this court in the case of Oklahoma Cotton Growers' Ass'n v. Hooven, supra, in which case Mr. Commissioner Leach reviews numerous cases from this state and other states on the subject, and quotes with approval from Felkner v. Winningham, supra, as follows:

"It will be seen from a consideration of the foregoing authorities that in order for the defendants in error to recover upon the injunction bond sued on for the expenses claimed in their petition, they must establish by the evidence that they either paid or incurred a fixed and existing liability for such expenses."

The rule announced in the above cases has been the consistent holding of this court on that question. In fact, the rule declared is supported by all the adjudications on the subject, except a few rare and stray cases, and except the decisions from the state of California, which jurisdiction requires as a condition precedent that the attorney's fee must be actually paid before an action can be maintained on the bond.

Our statute, section 415, Comp. Stat. 1921, by its very language limits the recovery for attorney fees, as well as other damages, to **damages sustained.** The statute requires the bond to "secure the party injured the damages he may sustain, including reasonable attorney's fees." It will thus be seen that attorney fees are embraced in the provision for damages, and such attorney fees are not to be levied in addition thereto as a penalty visited upon the losing party in an action where an injunction has been granted and later dissolved. Until the statute was amended to include attorney fees as an element of damages, it was not unlike the statutes of several jurisdictions, in some of which the courts held, and some still hold, that the expression "actual damages" or "damages sustained" does not include attorney fees. On the other hand, many courts have held that such expressions in the statutes are broad enough and in fact include the damages occasioned by the employment of counsel to defend against a wrongful injunction. Some of the jurisdictions holding to the former construction are the courts of the United States and its territories; also the states of Pennsylvania, Maryland, Arkansas, Arizona, Tennessee, Texas, and Virginia. Some of the jurisdictions giving their statutes the latter construction, that is, holding that the term "actual damages" or "damages sustained" or equivalent language includes attorney fees in defending the action, are the states of Florida, Illinois, Alabama, Kansas, New York, Iowa, Louisiana, Washington, and perhaps others.

The Oklahoma Territorial Supreme Court held to the view entertained by those jurisdictions which denied and deny attorney fees as an element of damages. Frantz v. Saylor, 12 Okla. 39, 69 Pac. 794. The Legislature accordingly amended the statute to read in its present form, simply to make it embrace and include in the term "actual

damages" or "damages sustained," attorney fees, And this element of damages is no more a penalty than any other actual damages, which in all cases must be pleaded and proved by the party claiming and asserting such, before a recovery is authorized. In other words, damages, and not penalties, are the essence of an injunction bond. An attorney's fee, the sum of which the person did not pay, or become definitely liable to pay, for defending against an injunction, can no more be the basis of damages secured by the injunction bond than any other feigned damages or damages which never in fact existed. The point is, the elements which make up actual damages or damages sustained are of equal dignity. They are susceptible of proof, and they can never be presumed. In the present case there is no testimony whatever regarding the amount of attorney fees which the plaintiff (the obligee on the bond) had paid or had agreed to pay his attorneys for defending against the injunction. No fixed or definite liability was shown. If the plaintiff were permitted to recover a sum in excess of the cost of the attorney fees to him, it is clear that the obligors on the bond would be penalized in the sum of this excess amount. **The provision of the statute relating to the reasonable value of the services or restricting the attorney fees to a reasonable sum, is for the protection of the bond, and in no wise operates as creating a penalty for the benefit of the obligee.** And the damages, including attorney fees, inure to the benefit of the defendant and not to the attorney. What the client may ultimately recover or fail to recover as damages on the injunction bond, as a matter of law, neither abridges nor enlarges his obligations to the attorney who defends his interest in the injunction proceedings. And, conversely, the damages which the defendant may ultimately recover in no manner abridges or enlarges the claims of the attorney.

The following cases fully illustrate the strict rule that damages as attorney fees must be restricted to the amounts actually paid or definitely agreed to be paid to the attorney. The Supreme Court of Nevada in its early history (Brown v. Jones, 5 Nev. 374) held that:

"The actual expense and loss occasioned by a writ of injunction are a proper subject of consideration in a suit on the injunction bond. including the costs of the original proceeding. the reasonable counsel fee paid, agreed to be paid or liquidated, for setting aside the injunction, and such other damage as is the natural and proximate consequence of the issuance and enforcement of the writ, and no more; nothing, generally, can be included which is not the actual, natural, and proximate result of the injunction."

Illinois has, or had, a statute similar to ours which provided for recovery on an injunction bond for "actual damages sustained." The Supreme Court of that state in the case of Steele et al. v. Thatcher, 56 Ill. 257, in the body of the opinion said:

"The only claim for damages was for counsel fees in the injunction suit, and the only proof offered by the plaintiffs below in support of the claim was the opinions of attorneys as to what the services rendered by the solicitors in the injunction case were worth. **The value of such services might have been one sum, and the cost of them to the defendants a much less sum.** The condition of the bond was, to pay all such damages as the defendants might sustain, and they were entitled to recover only to the extent of the damages really sustained by necessary expenditure, or by liability incurred, in litigating the injunction case." (Emphasis ours.)

In other words, a good faith contract between the parties must be shown and the liability must be fixed, and shown, just as any other element of damages.

Missouri has a statute similar to ours, except the method of procedure for recovery. Their statute provides that damages on the bond shall be assessed or may be assessed by the court at the time of dissolving the injunction, or later, on motion. In an action to dissolve an injunction against the city of St. Louis, the city prevailed in the Supreme Court, and then filed its motion in the trial court for an allowance of a reasonable attorney's fee. The fee was allowed, from which allowance the plaintiff in the injunction action appealed. (Uhrig v. City of St. Louis, 47 Mo. 528.) The order allowing the attorney's fee was reversed. The rule announced in the syllabus of that case is as follows:

"The damages to be assessed upon the dissolution of an injunction (Wagn. Stat. 1030, No. 13) are what the defendant has actually suffered. And in the assessment of damages on the dissolution of an injunction against the city of St. Louis, it appearing that the city counsellor received no special fee for defending the injunction suit. held, that a fee for such defense could not be taxed as damages."

The order, or writ of injunction. plays an important part in the field of equity jurisprudence, and its use has been extended by the statute law of the various states. Like practically all the equitable remedies, it

had its origin in the civil law. The civil law was created among men to enforce that which is right and to prevent that which is wrong. It has been said that the "mud-sill of the entire structure of the civil law, which includes equity jurisprudence, is the administration of justice." It has never been the policy of the law that the order of injunction should be made so hazardous, and its legitimate use so imperiled that no one would venture to call it into play except in cases where the right to it is so clear that its use will be rarely needed. For this reason, the fixed policy of the Supreme Court of the United States was stated in the case of Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43; in speaking of attorney fees as damages for wrongful injunction, it was said:

"There is no fixed standard by which the honorarium can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party there is danger of abuse. A reference to a master or an issue to a jury might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause." See, also, Arcambel v. Wiseman, 3 Dall. 306, 1 L. Ed. 613; National Society v. American Surety Co., 56 Misc. R. (N. Y.) 627, 107 N. Y. Supp. 820."

The federal courts deny liability on injunction bonds, for attorney fees, on the ground that "such is contrary to the analogies of the law, and against the sound principles of public policy." Our law permits such a recovery, but the recovery is restricted to a reasonable amount which the litigant has either actually paid or has definitely contracted to pay. That is, the damages must be liquidated before the action is brought. The law does not permit a defendant in an injunction action to speculate on the outcome of an injunction proceeding, and on an action on the bond amerce or penalize the obligors on the bond without the obligee having suffered the damages claimed, by either a payment of the counsel fees or by having incurred a fixed liability therefor, such as the obligee intended to pay, and was bound to pay, regardless of the success or failure in realizing a recovery on the bond. In this connection, it can be safely said that the courts without using the exact language have established the following as the test for such recovery:

First: The fees must be reasonable.

Second: If the fees are not actually paid,

there must be shown a bona fide obligation to pay a sum certain which the attorney could enforce against the client, regardless of whether or not there was ever an actual recovery on the bond. In short, the matter reduces itself to "damages sustained" when the statute is correctly read.

The reason for this rule rests upon two independent reasons. First, it is the plain application of the statutes and rules governing pleading and proof regarding any element of damages sought to be established. Second, public policy, akin to that which is adhered to by Supreme Court of the United States regarding attorney fees as an element of damages or as penalties, requires a strict, or at least a substantial compliance with the rules for establishing items of damages in courts of law.

The reported cases show that often actions are brought to recover on injunction bonds for damages incurred by attorney fees only. These actions are commenced, of course, after the injunction proceedings have terminated, and at a time when the defendant, if he had no definite contract or agreement with his attorney before the trial of the injunction proceedings, has had ample time to make a settlement with his attorney for defending his interest. In addition to its being unsound from a legal point of view, it would be manifestly unfair to the obligors on the bond to commence suit against them without first a liquidation of the claims for damages covered by the bond. The law does not presume that in every instance an action must be filed in the courts for the recovery of the damages covered by an injunction bond. Until the damage is fixed or ascertained, there is no basis for payment.

Finally, the matter reduces itself to this simple formula: (1) The damages in the nature of attorney fees must be fixed, that is, certain in amount before an action will lie against the obligators on the bond; and (2) they must be reasonable.

In this connection it may be mentioned that the word "fixed," as used herein and in the cases of Felkner v. Winningham, supra, Oklahoma Cotton Growers' Ass'n v. Hooven, supra, and others, has been often defined by the courts The word means "liquidated or rendered certain." Black's Law Dictionary (2nd Ed.). The Illinois Appellate Court in Smart v. Morrison, 15 Ill. App. 229, in illustrating the meaning of the word "fixed," said:

"When an absolute contract is entered

into, the rights and liabilities of the parties thereto are said to be 'fixed'."

We have dealt with this phase of the case with tedious and perhaps tiring particularity. The writer has in a way justified the effort from the fact that it is apparent that a portion of the legal profession have either misread the particular governing statute and our former adjudications on the subject, or have confused the statute with certain other provisions of our law which permit the allowance of reasonable attorney fees to be fixed in the principal action, in actions of a certain nature, in addition to establish contractual indebtedness, and in all cases where such expenses are based upon an express contract.

There are other errors urged and perhaps other slight errors committed, but on a retrial of the case it is not likely that these errors or alleged errors will recur.

For the reasons herein stated, the judgment of the trial court is hereby reversed, with directions to grant a new trial.

LEACH, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

BENNETT and FOSTER, Commissioners, dissent.

By the Court: It is so ordered.

Note.—See under (3) 14 R. C. L. 486; 3 R. C. L. Supp. p. 238; 5 R. C. L. Supp. p. 768; 7 R. C. L. Supp. p. 462. See "Injunctions," 32 C. J., § 815, p. 470, n. 33; §824, p. 478, n. 25; §825, p. 478, n. 36.