# James Savio et al., Appellees, v. Anton Vieno et al., Appellants.

## Gen. No. 6,268.

1. INJUNCTION, § 256*—*when decree from which no appeal is taken may not be questioned in subsequent contempt proceedings.* A decree from which no appeal was taken by the parties against whom it was rendered cannot be questioned by them, as to the things determined thereby, on their appeal from a sentence for contempt for their violation of an injunction order entered in the suit.

2. FRATERNAL AND MUTUAL BENEFIT SOCIETIES, § 55*—*what does not constitute justification for violation of injunction restraining officers of seceding body from disposing of funds of society.* Where certain officers of a seceding body of a fraternal beneficiary society

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

were enjoined from disposing of any funds of the society in their hands, *held* that the fact that one of such officers merely signed the vouchers upon which such funds were paid out, or that such funds were paid out by the vote and direction of the seceders, or that the name of the body had been changed and they were no longer affiliated with the society, would not justify the violation of such injunction by any of such officers.

3. APPEAL AND ERROR, § 1265*—*when existence of convening order of court presumed.* Where the record on appeal from a sentence for contempt for violation of an injunction order showed in evidence a decree enrolled in the suit in which such order was entered on a certain day signed by the presiding judge but failed to show a convening order for that day, to which evidence no objection was made because of such failure, *held* that it must be presumed in support of such record that there was a convening order which would have been introduced had objection been made.

4. JUDGMENT, § 360*—*when decree imports verity and may not be contradicted by parol.* Where a record of court proceedings offered in evidence showing the entry on a certain day of a certain decree by a certain judge was preceded by a proper convening order showing such judge present, *held* that such record would import verity and could not be contradicted by parol.

5. INJUNCTION, § 256*—*what is not defense in contempt proceedings for violating.* The fact that no decree may have been rendered in a suit would not relieve parties who had violated an injunction against them in such suit from a sentence for contempt for such violation.

6. INJUNCTION, § 245*—*what is binding force of.* An injunction issued by a court having jurisdiction must be obeyed until it is modified or dissolved.

7. CLERKS OF COURTS, § 3*—*when may enter on own motion omitted part of record of proceedings.* A clerk of court may enter any omitted part, as a convening order on a particular day, of a record of proceedings in court of his own motion whenever he discovers such omission during the term or before the first day of the next term, and an order of court to make such correction is not necessary.

8. APPEAL AND ERROR, § 1273*—*what presumptions arise as to existence of daily convening orders by city courts.* A court organized under the statute as to city courts has both chancery, common law and criminal jurisdiction, and it will be presumed, from its common-law and criminal character, that it had at a certain term both a common-law and a criminal record and a convening order

*See **Illinois Notes Digest**, Vols. **XI** to **XV**, and **Cumulative Quarterly**, same topic and section number.

for every day it was in session, and it will not be presumed there was no convening order also in its chancery record.

9. JUDGMENT, § 2*—*when defect of record as to time of convening of court does not invalidate.* In many respects a term of court is regarded in the law as a day, and the fact the record showed the court convened at 10:30 p. m. instead of at 10:30 a. m., when it actually convened and acted, would not invalidate a judgment entered on that day.

10. INJUNCTION, § 262*—*when amendments to injunctional order without leave of court do not work dissolution of injunction.* Amendments to an injunction order which only enlarged and strengthened the allegations of the bill would not affect the force of the injunction or work its dissolution, even though leave of court was not obtained to amend without prejudice to the injunction, and even though the injunction could have been dissolved on motion because such amendments had been made without such leave.

11. APPEAL AND ERROR, § 41*—*when Appellate Court has jurisdiction of appeal in contempt proceedings.* An appeal in contempt proceedings arising in a city court is properly taken to the Appellate Court.

12. CONTEMPT, § 70*—*when order sentencing for is erroneous.* An order sentencing a party found guilty of contempt "from the date hereof" regardless of delay caused by appeal from such order is erroneous in so restricting the sentence, and the words will be stricken out on such appeal.

Appeal from the City Court of Spring Valley; the Hon. HARRY W. McEWEN, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed November 9, 1916. Modified and refiled December 6, 1916.

J. L. SPAULDING and J. L. MURPHY, for appellants.

GILBERT F. WAGNER, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

Anton Vieno, Joseph Corna, Dominick Bobbio, Joseph Compasso and John Salvetti, defendants in a chancery cause in the City Court of the City of Spring Valley, and John L. Murphy, their solicitor in said

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

cause, were adjudged guilty of contempt of court in violating an injunction in said cause. This is an appeal by them from the sentence imposed upon them for said contempt.

On the merits the case is clear. On November 29, A. D. 1913, Robert J. Blum, James Savio and Andrew Savio filed a bill of complaint in said City Court against said five defendants above named, and Court Rose No. 12 of the Foresters of America of Spring Valley, Illinois. The bill alleged that the Foresters of America is a fraternal beneficiary society, composed of a supreme court, and grand and subordinate courts, and that said Court Rose No. 12 was a subordinate court thereof located in said City of Spring Valley; that Anton Vieno was then treasurer of said Court Rose No. 12; that said Joseph Corna was then financial secretary of, said society; that Joseph Compasso, Dominick Bobbio and John Salvetti were then trustees of the said society, and were then and had been acting in their official capacities. The bill charged that on November 24, 1913, a meeting of said Court Rose No. 12 of Spring Valley, Illinois, was held, at which the majority then present undertook to secede from the order of the Foresters of America; that the complainants are members of said society, and received no notice of said meeting (which was a special meeting), and that the notice given of said meeting did not comply with the constitution and rules of the order, and that the acts and proceedings of said meeting of November 24, 1913, were in violation of the constitution of the order, and that said meeting was not properly called, but was fraudulently called and held; that there then was in the hands of the defendants a large sum of money collected from the members of said Court Rose No. 12, and belonging to said Court Rose No. 12; and that it also owned certain real estate in Spring Valley, which is described; and that the officers named as defendants threaten to dispose of the funds

and property of said Court Rose No. 12 to the irrep-
arable injury of the complainants and will do so un-
less restrained by injunction.  The bill made defend-
ants the said five officers and said Court Rose No. 12
and asked that they be restrained from selling, assign-
ing, incumbering or otherwise disposing of the moneys,
funds and property, real and personal, of said Court
Rose No. 12 until the further order of the court; and
that the acts of said society at said meeting on Novem-
ber 24, 1913, be declared illegal, void, and of no force or
effect; and also prayed for further relief.  The bill
was verified by said three complainants.  On said day
the judge of the City Court of Spring Valley entered
an order for an injunction pursuant to the prayer of
the bill, and on the said 29th day of November, 1913,
an injunction was duly issued, which commanded the
defendants and their attorneys, solicitors, agents and
servants to absolutely desist and refrain from selling,
assigning, incumbering or otherwise disposing of the
moneys, funds and property, real and personal, of
Court Rose No. 12 of the Foresters of America of
Spring Valley, Illinois, until the court otherwise or-
dered.  This injunction was duly returned served on
the 1st day of December, A. D. 1913, upon each of the
defendants therein named.  At some subsequent date
Blum died, and his death was suggested, and his name
ceased to appear in the cause.  The summons in that
cause was returnable to the May term, 1914.  Thereafter
the seceding body changed its name and Court Rose
No. 12 elected other officers, and thereafter Court
Rose No. 12 was changed from a defendant to a com-
plainant, and on June 22, 1914, the complainants by
leave of court filed an amended and supplemental bill
against the said five defendants and the Grand Court,
Foresters of America of the State of Illinois.  In this
amended bill the laws of the order were set out in
detail, and it was therefrom shown in detail that said
meeting of November 24, 1913, was not held in com-

pliance with the laws of the order. It was also shown that, by the laws of the order, if a subordinate lodge such as Court Rose No. 12 undertook to secede from the order and there were left fifteen members who did not secede, including one who was competent to preside, then such remaining members should continue to constitute the society, and should be entitled to all of its property; and that if less than that number did not secede, the property of the society should belong to the Grand Court of the order. The amended bill charged that there were nearly sixty members who did not join in the secession, and among them were numerous persons competent to preside, and it was charged that therefore the funds of this Court Rose No. 12 belonged to that part of the society which did not secede. There were several slight amendments to the amended and supplemental bill, and an additional verification thereto. Defendants made a motion to dissolve the injunction, and that was denied, and they then answered and made another motion to dissolve the injunction, which was denied, and from each of these orders the defendants appealed to this court, and we heard the two appeals together, and affirmed the orders in *Savio v. Vieno,* 193 Ill. App. 395. The proofs were taken and reported by a master, and there was a hearing and the cause was taken under advisement, and there was a decree on March 20, 1915, in favor of the complainants. This decree, so far as appears, has never been appealed from nor questioned by a writ of error. It is very full in its findings of fact, and decides every issue against the defendants. Appellants in their argument here give an alleged history of the various matters pertaining to Court Rose No. 12, and the secession therefrom or its change of name, but this narrative is not supported by this record; and the decree which is binding upon the defendants at the present time presents a very different history of the transactions involved, and appellants

are not at liberty here and now to dispute the things determined by that decree. Appellants here seek to find imperfections in the decree and some slight variance from the pleadings, and to claim that it is not sufficiently supported by the evidence. We are of opinion that in this contempt proceedings the defendants and their solicitor cannot question the sufficiency of that decree. The court unquestionably had jurisdiction at the suit of the minority members of the society to restrain the transfer of its moneys to another society formed by an act of secession, and to determine to whom those funds rightfully belonged. That decree is final until it shall be modified or reversed on appeal or writ of error. The defendants cannot in this proceeding again try the issues settled by that decree.

The facts turn out to be that when said injunction was served upon said defendants on December 1, 1913, there was in the hands of said five defendants $2,329.52 belonging to the local society, and arising from dues, etc., paid in by the members. This money was in their possession and under their control when the injunction was served. During December, 1913, Murphy was hired by the seceders to procure a change of name for the body formed of the seceders. In January, 1914, the defendants presented to him a copy of the injunction which had been served upon them. At that time he became fully aware of the language of the injunction, and he became solicitor in the chancery cause for said five defendants, and he thereafter was bound by that injunction as fully as they were. On May 28, 1914, the five defendants paid Murphy, and he received from them, $100 of these funds. On July 28, 1914, the five defendants paid Murphy, and he received from them, $1,600 of these funds. He took these sums to apply in payment for his professional services rendered and to be rendered in said chancery cause and other matters. About that time the five defendants

paid out $500 more of this money on bills owing by the seceders, and the rest of this fund they afterwards paid out. Before these moneys were paid out by the defendants or received by Murphy, a discussion was had on the question whether this would be a violation of the injunction, so that they acted with the injunction in mind. Murphy spoke very slightingly to them of the injunction and they paid out the money. They thereby disposed of the entire fund in litigation, which the decree found belonged to the society composed of those who did not secede from the Foresters of America. It would be difficult to conceive of a more flagrant and intentional violation of an injunction, and the rights of the complainants are practically destroyed, so far as here appears, unless the order adjudging the defendants guilty of contempt produces the results which were intended. By the judgment in the contempt proceedings the five defendants were sentenced to imprisonment in the county jail for six months, but it was provided that they could at any time relieve themselves of that imprisonment by paying direct to the clerk of the court the sum of $2,329.52, which they so wrongfully expended. The same judgment sentenced Murphy to imprisonment in the county jail for one month, but with the proviso that he could relieve himself from imprisonment by paying to the clerk of the court the sum of $1,700 so wrongfully received by him. It is said that the five defendants are poor and unable to raise that sum of money, but it is fairly evident that if Murphy turns back the $1,700 which he received, the other defendants will then be able to comply with the rest of the order, and the funds so wrongfully withdrawn will be placed in the hands of the clerk of the court. The clerk of the court will hold these funds subject to the decree which has been entered, and subject to the control of the court, and the sole purpose of the order is to have the money restored to a place where it can be applied as the

decree finds that it should be. We see no injustice in this. It is insisted that Corna ought not to have been convicted of contempt because he did not actually pay out the money. He signed the vouchers upon which it was all expended. The defendants seek to justify themselves by the vote and direction of the seceders, who, before this time, had changed their name, and were no longer affiliated with the order of Foresters of America. We are of opinion that this does not excuse them.

Before the trial of the original cause, a change of venue was taken from Judge Hawthorne of the City Court of Spring Valley, and Judge Sheldon, of the City Court of Sterling, tried the case. In this contempt proceeding, complainants offered in evidence certain pages of the chancery record of the said City Court, including the enrolled decree of March 20, 1915, and the respondents made no objection thereto. It does not appear in the record before us that said chancery record contains a convening order for that day, and this is the only defect in said decree as introduced by the petitioners; and it is signed by "Carl E. Sheldon, presiding judge." As no objection was made to its introduction because a *placita* or convening order was not put in evidence, we must presume in support of the record that there was such a convening order, which would have been introduced if objection had been made because it was not offered. In their defense the respondents introduced the original draft of this decree, which bore the file mark of March 20, 1915, and sought to prove that, in fact, it did not reach the clerk until nearly a month later, and that Judge Sheldon was not present on March 20, 1915, presiding in the City Court of the City of Spring Valley, but that this decree was sent by him from some other place with the statement that Judge Hawthorne could cause it to be entered. It is therefore claimed that there was no decree entered on March 20, 1915, and

that the decree is a nullity. We are of opinion that if the record offered in evidence of the proceedings of that day was preceded by a proper convening order showing Judge Sheldon present, that record imported verity, and could not be contradicted by parol. Some other suggestions hereinafter made concerning court records are also applicable; but if there is no such decree as this it does not relieve the respondents of the charge of contempt of court. Appellants argue here that if this decree is of no effect, then the cause ended when it was heard by Judge Sheldon and was taken under advisement, or ended at the date of such ineffective decree. We cannot assent to this conclusion. If Judge Sheldon has not yet entered a decree in said cause, then he still has the case under advisement, but the contempt of court was actually committed nearly a year before that time. The funds were dissipated in May to July, 1914, and the defendants are equally guilty of contempt and equally subject to punishment if the case has never yet reached a final decree. True, if there is in fact no decree, the alleged decree cannot be used to prove complainants' contentions as to the rights of the parties, but whether respondents are guilty of contempt does not depend upon the final result of the litigation. As the court had jurisdiction, respondents were not at liberty to disregard the injunction even if they thought it had been improvidently granted, or that it would be modified or dissolved on the final hearing. An injunction issued by a court having jurisdiction must be obeyed until it is modified or dissolved. *People v. McWeeney*, 259 Ill. 161; *Flannery v. People*, 225 Ill. 62; *Christian Hospital v. People*, 223 Ill. 244; *Franklin Union No. 4 v. People*, 220 Ill. 355; *Clark v. Burke*, 163 Ill. 334. If there is no final decree, the funds which may be paid by respondents under the order appealed from will remain in the hands of the court subject to such final decree as shall be entered.

ˈn the contempt proceedings the court, on September 15, 1915, found the respondents guilty, and gave them until September 29, 1915, to purge themselves of such contempt if they should see fit; and on September 29th the final order was entered, sentencing the defendants to imprisonment in the county jail unless they should relieve themselves thereof by paying to the clerk of the court the moneys so wrongfully paid out. This all purports to be of the May term, 1915. It is the contention of the appellants that the City Court was never legally in session in said May term after the first day, and therefore was not in session when this judgment was entered. The May term, 1915, began on May 3rd, and the proceedings of that day in the chancery docket were preceded by a proper convening order showing Judge Hawthorne present. At the end of the proceedings in the chancery docket of that day was an order that the court now adjourn until May 5th, at 10:30 p. m. The chancery record of May 5th, shows chancery business transacted, and was not preceded at that time by a convening order showing a judge present, and the court then adjourned to another day. There were in this chancery record various adjournments at different times during said term, some of which showed a proper convening order on the day that the adjournment was made, and the others did not. Later in the term the question of the existence of the court was raised before Judge McEwen of the City Court of DeKalb, who presided at the hearing of this entire contempt proceeding, and he entered an order directing *placitas* to be supplied at the dates of sessions of court where they did not then appear in the record of that term, and they were so supplied, and the record as now before us contains the proper *placitas*. It was also proved before him that, in fact, the adjournment before mentioned was not to 10:30 p. m. but to 10:30 a. m., and that there was another

order which incorrectly stated the hour to which an adjournment was taken, and the court directed those orders to be amended. The theory of appellants is that there never was any court in session at the May term after the first day, and that the court expired because it was not legally convened on May 5th, and that the subsequent proceedings to amend were had when there was no court in session, and therefore the amendments could not be made. At common law it was the duty of the clerk to write up the proceedings of each day by the following morning, so that the judge could then sign the record. *Governor v. Dodd*, 81 Ill. 162. By sections 14 and 15 of chapter 25 of the Revised Statutes (J. & A. ¶¶ 2139-2140), pertaining to clerks of courts, first adopted in 1859, the time within which clerks of courts could perform this duty was very much enlarged. It is there provided that it shall be the duty of clerks of courts to enter of record all judgments, decrees and orders of their respective courts before the final adjournment of the respective terms thereof, or as soon thereafter as practicable, and a penalty is there provided if any clerk should so fail to enter of record any order, judgment or decree of his court by the next succeeding regular term after the same is rendered. In construing this statute it was held, in *McNamara v. People*, 183 Ill. 164, that the clerk of a court is not bound to enter the orders or judgments on the day they may be made; but he should do so during the term unless for some good cause they cannot be so made. So, in *People v. Petit*, 266 Ill. 628, it was held that a judgment can ordinarily be proved only by the record, but that the judgment exists from the time the court acts, even though the entry of the judgment may not have been formally written by the clerk; that the statute contemplates that the judgments, decrees and orders of the court cannot be immediately entered of record, and directs the clerk to enter them by the final adjournment of

the term or as soon thereafter as practicable; that the Supreme Court will take judicial notice that the record of the proceedings of a court is frequently not written up during the term; that the judgment of a court does not cease to be a judgment because the clerk failed to enter it of record, and if the clerk should become liable to a penalty for neglect of his duty, still the judgment of the court would not lose its binding effect, and it would still be the duty of the clerk to enter it of record; and that until the expiration of the term a judgment was still under the control of the court. We are of opinion that these principles should apply as well to a convening order as to the body of the judgment or decree. It is also a matter of common practice in chancery cases that when the judge directs a decree in favor of a particular party, a memorandum thereof is usually made upon a minute book kept by the judge or clerk, and that the successful attorney thereafter takes some considerable time in which to prepare the decree in such manner as to meet the views expressed by the court, and that it, in fact, does not usually reach the clerk for enrollment in the record until some later day. If that should chance to be the only decree on that particular day, it might very often happen that there would not be, in the chancery docket, any convening order until the enrollment of that decree. Therefore the clerk was not obliged to enter of record this decree or any part thereof prior to the time these amendments were made. We cannot doubt that if he could enter the whole of a decree during any day of the term, he could enter any omitted part of his own motion whenever he discovered such omission during the term, or before the first day of the next term; and that when he discovered that on some particular day in which proceedings were entered in his chancery record he had failed to place a convening order before the proceed-

ings of that day in the chancery record, he had power, of his own motion, during that term, or before the first day of the next succeeding term, to enter such convening order; and that therefore the direction by the court to him to supply these convening orders was unnecessary. Moreover, the City Court of Spring Valley, organized under the general act relating to city courts, is not merely a chancery court, but is also a court of common-law and criminal jurisdiction. We have a right to presume that at the May term, 1915, it had a common-law record and a criminal record; and these different records of the court being usually kept in different books, we have a right to presume, in support of the jurisdiction of the court, and in the absence of evidence, that there was either in the common-law record or the criminal record a proper convening order for every day the court was in session; and we will not assume, because the clerk on May 5th, or at any other day of the term, did not write a convening order in the chancery record, that therefore there was no convening order in the other record, and therefore there was no court. It is instructive that in the appeal bond executed by all the respondents, and by which this matter is brought to this court, it is recited that the said complainants "did, on the 29th day of September, A. D. 1915, at a term of the City Court of the City of Spring Valley in said county, then and there being holden within and for said city, obtain and recover" the judgment here sought to be reversed.

Appellants appear to contend that because court adjourned to 10:30 p. m. on a certain day, when, in fact it met at an earlier hour, therefore the court lost jurisdiction. In many respects a term of court is regarded in the law as one day. *Shoemate v. Lockridge,* 53 Ill. 503; *Chiniquy v. People,* 78 Ill. 570; *Brown v. Leet,* 136 Ill. 203. In *Richardson v. Beldam,* 18 Ill. App. 527, in an opinion by McAllister, J., in a case

where a court on Saturday adjourned to the following Monday at ten o'clock a. m. and on Monday opened court before that hour and entered a judgment, it was held that reason, justice and the law all combine in requiring the court to hold that such a judgment should not be regarded as void or so irregular as to be set aside for that reason only. However, if a party to a suit were taken by surprise by the convening of the court at an earlier hour than that to which it had adjourned, he might have a right to relief. The court there said: ''To hold that the powers of the court were absolutely suspended until the precise time to which it adjourned, would be the recognition of a doctrine fraught with inconvenience and dangerous consequences. In addition to a standard city and a standard railroad time, it would be necessary to have a standard court time, because the other two vary from each other. If the principle be recognized, five minutes too soon would be as fatal as forty or sixty minutes too soon. This case illustrates the wisdom of the old common-law rule, that the term of a court, as fixed by law, though running through weeks and even months, is to be regarded as one day, and that the law takes no recognizance of parts of a day.'' Moreover, although the court convened at 10:30 a. m. on the particular day here in question instead of at 10:30 p. m., there is no proof but that it may have been continued in session until 10:30 p. m. or later, and the action in this case may have been taken after that hour for all that this record discloses.

Appellants' brief contains a quotation from *Binney's* case, 2 Bland 99, which suggests that under certain circumstances therein stated, the making of an amendment to an injunction bill destroys the injunction previously granted thereunder, unless an order of court is obtained that the amendment be without prejudice to the injunction. It is said in 22 Cyc. 981, that such an amendment may render a temporary injunc-

tion ineffective, but the notes there show that in numerous English cases it is held that the dissolution does not follow as a matter of course on the making of the amendment. We discussed this question in *Savio v. Vieno, supra,* and held that amendments which only enlarge and strengthen the allegation of the bill do not affect the force of the injunction. In *Selden v. Vermilya,* 4 Sandf. Ch. (N. Y.) 573, it was held that in New York, "an injunction does not drop on amending the bill, although the order granting leave may be silent on that subject." Based upon this and other authorities, 2 High on Injunctions (4th Ed.), sec. 1594, states the following as the law on this subject: "The prevailing doctrine now is that whenever, pending an injunction, an amendment is allowed to the bill, it is without prejudice to the injunction, which still stands, although the order granting leave to amend is silent as to its effect upon the injunction." In the present case, the bill was evidently hastily prepared, and its allegations were general, and the amended and supplemental bill and the subsequent amendments were for the purpose of setting out the laws of the order in detail, and showing in detail wherein the action of the meeting of November 24, 1913, was unlawful under the laws of the order, and not binding upon the complainants and the members who did not secede from the Foresters of America. Additional verification of the bill was made, but, in the former case before us, we held that the original verification was not defective, but was sufficient. We are of opinion that amendments which do not change the character of the case, but only enlarge the allegations of the bill and support the case already made, do not work a dissolution of the injunction, even though leave of court was not obtained to make the amendment without prejudice to the injunction, and that even if defendants could have had the injunction dissolved because of the amendments made without

an order that they be without prejudice to the injunction (a defect which the complainants could then have cured), the defendants should have moved to dissolve the injunction instead of violating it.

Appellants suggest doubt whether they have appealed to the right court, and cite cases where the Supreme Court has taken jurisdiction of contempt proceedings appealed from the trial court to that court. In most of the cases above cited by us as to the duty to obey an injunction, the appeals were to the Appellate Court and thence to the Supreme Court without question. There were like appeals in *People v. Diedrich,* 141 Ill. 565, and *Leopold v. People,* 140 Ill. 552, and in many other cases. *Schmidt v. Cooper,* 274 Ill. 243, is a recent contempt case which passed through the Appellate Court to the Supreme Court without question. The proceeding is civil or remedial and is between the parties to the litigation. We conclude we have jurisdiction to decide the cause.

Several other minor points discussed by appellants have received our consideration and are overruled by us, and we think it unnecessary to discuss them. Some questions involved in this record were discussed by us in *Rubendall v. Tarbox,* 200 Ill. App. 260.

The order appealed from in certain parts uses the words "from the date hereof," and thereby seems to restrict the imprisonment to begin on that precise date, regardless of the delay caused by this appeal. Other parts of the order are not so restricted. To avoid future dispute as to the meaning of the order, we modify said order by striking out of it the words "from the date hereof" wherever they appear, following the course pursued in *Harris v. Harris,* 156 Ill. App. 336.

The judgment as so modified is affirmed at the costs of appellants.

*Affirmed.*