428

Albert J. Leonard et al., Plaintiffs in Error, v. Marguerite Pearce et al., Defendants in Error.

Gen. No. 8,611.

Opinion filed September 20, 1933.

NELSON, BURTON & QUINDRY and IRVING C. DESCHAUER, for plaintiffs in error.

WERNER W. SCHROEDER, A. F. BEAUBIEN and RUNYARD & BEHANNA, for defendants in error.

MR. JUSTICE DOVE delivered the opinion of the court.

The original bill in this proceeding was filed June 25, 1929, and sought to restrain defendants in error from interfering with plaintiffs in error in the full, free and uncontrolled use of the waters of Lake

Zurich for all lawful purposes, including the right of navigation, fishing, hunting and bathing in and upon all of the waters of said lake and from causing the arrest of, or threatening to cause the arrest of, plaintiffs in error and any other persons who might navigate, fish, hunt or bathe in and upon the waters of the lake. Upon notice a temporary injunction was issued in accordance with the prayer of the bill on July 3, 1929. Subsequently defendants in error filed separate answers, and replications having been filed, the cause was, on February 26, 1930, referred to the master, who heard the evidence, and on November 26, 1930, filed his report of testimony together with his conclusions, finding that the plaintiffs in error had not established the allegations of their bill and recommending its dismissal. On January 12, 1931, the cause was heard by the chancellor and on January 23, 1931, he read an opinion and announced that plaintiffs in error were not proper parties to ask for the relief prayed for and that he would dismiss the bill unless the State became a party complainant.

On January 26, 1931, A. V. Smith, the State's Attorney of Lake county, served notice on the solicitors interested in this proceeding that he would appear before the chancellor on January 29, 1931, and ask leave to intervene on behalf of the People of the State of Illinois, and at the same time served them with a copy of his proposed intervening petition. Accordingly on January 29, 1931, leave was granted the State's Attorney to file said intervening petition, the same was filed, a hearing had thereon and leave granted the People of the State of Illinois upon the relation of the State's Attorney to intervene and become an additional party complainant, and leave was granted the People and the plaintiffs in error to file their amended bill of complaint instanter, and the amended bill, sworn to by one of the complainants in

the original bill, was filed by leave of court. On the same day, the defendants in error, Marguerite Pearce and George W. Pearce, filed their motion to strike the intervening petition of the People of the State of Illinois and the amended bill of complaint from the files, and also to dissolve the preliminary injunction.

On February 27, 1931, notice was served by counsel for Marguerite and George W. Pearce that they would call up these motions for disposition on March 2, 1931, and on that day, March 2, 1931, the motion of the Pearces to strike the amended bill of complaint from the files was heard and denied, and an order entered directing that an injunction issue upon the application of the People of the State of Illinois, according to the prayer of the amended bill and without bond. On the same day, the motion of Marguerite and George W. Pearce to dissolve the temporary injunction was allowed, and an order entered finding that an amended bill of complaint, making the People of the State of Illinois an additional party complainant, had been filed, that there was no equity appearing on the face of the original bill, that the evidence failed to sustain the allegations of the original bill, and that the complainants were not proper parties to ask for the relief prayed for. This order dissolved the temporary injunction, directed that a new injunction issue without bond, in favor of the People of the State of Illinois, in accordance with the prayer of the amended bill, and granted leave to Marguerite Pearce and George W. Pearce, to file a suggestion of damages to be heard at some future date to be fixed by the court.

On May 18, 1931, a decree upon the merits of this controversy was rendered. That decree, affirmed by the Supreme Court, *Leonard v. Pearce,* 348 Ill. 518, vacated the leave granted the People to intervene, struck the amended bill from the files, dismissed the original bill for want of equity and expressly reserved

the question of the assessment of damages for further hearing by the Lake county circuit court. The final order of affirmance by the Supreme Court was filed in the Lake county circuit court on July 19, 1932.

On September 15, 1932, August Froelich, Marguerite Pearce and George W. Pearce filed their suggestions, claiming that they had sustained damages in the sum of $7,500 for the reasonable fees and charges of their solicitors and for other expenses in and about procuring the dissolution of the preliminary injunction and in a like sum for expenses of witnesses and for losses of income caused by the wrongful suing out of the injunction. On September 18, 1931, a bill of particulars was filed by the same parties, and subsequently a hearing had before the chancellor upon these suggestions, and from the evidence he found that Marguerite Pearce, George W. Pearce and August Froelich had sustained damages in the sum of $5,000 for solicitor's fees and $2,500 for the loss of income, use and enjoyment of the premises while said injunction was in force and entered a money order against plaintiffs in error for $7,500. To review this order, the present writ of error has been sued out.

It is first insisted by plaintiffs in error that the chancellor lost jurisdiction to pass upon the suggestion of damages filed by defendants in error inasmuch as the decree of May 18, 1931, reviewed and affirmed by the Supreme Court, finally disposed of the merits of this controversy and no written suggestion of damages had been filed prior to that time.

The statute, Cahill's St. ch. 69, ¶ 12, provides that in all cases where an injunction is dissolved, the court, after dissolving such injunction and before finally disposing of the suit, upon the party claiming damages by reason of such injunction suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may re-

quire. The only condition imposed upon the party claiming damages is that his written suggestion must be made after the injunction is dissolved and before the suit is finally disposed of. *Wing v. Dodge,* 80 Ill. 564. The preliminary injunction was dissolved March 2, 1931. This suit was finally disposed of by the entry of the decree of May 18, 1931, and between these dates the statute gave defendants in error a right to suggest in writing the damages they had sustained, but no such suggestion was ever filed. The court, however, had expressly granted Marguerite and George W. Pearce leave to file their suggestion of damages, and while no time was fixed in the order of March 2, 1931, for their so doing, we are nevertheless of the opinion that the court retained jurisdiction for the purpose of assessing damages so far as Marguerite and George W. Pearce are concerned. The only reasonable construction that can be given to that portion of the final decree of May 18, 1931, which reserved the question of the assessment of damages for a further hearing, is that the court meant to retain jurisdiction for the purpose of hearing at some future time the questions which would arise upon the suggestion of damages which Marguerite and George W. Pearce had been granted leave to file by the order of March 2, 1931. *Hillmer Co. v. Behr,* 264 Ill. 568; *Welch v. City of Highwood,* 165 Ill. App. 78; *Poyer v. Village of Des Plaines,* 123 Ill. 111.

It is next insisted that the chancellor erred in not striking from the files the suggestion of damages and the bill of particulars filed by the defendants in error, inasmuch as August Froelich never made any motion to dissolve the temporary injunction, was never granted leave to file a suggestion of damages and the suggestion that was filed was filed after the suit was finally disposed of upon its merits. The suggestion of damages was joint, and stated that the defendants in

error, Marguerite Pearce, George W. Pearce and August Froelich, were claiming damages in the sum of $7,500 for the fees and charges of their solicitors and for other expenses in and about procuring the dissolution of the injunction, and in a like sum for certain losses of income which they had sustained by the wrongful suing out of the injunction. The bill of particulars contained 14 items and recited that plaintiffs in error were indebted to defendants in error, Marguerite Pearce, George W. Pearce and August Froelich, in the aggregate sum of $10,108.86. In only two orders is there any reference to the assessment of damages; the first is the order entered on March 2, 1931, which recites that the cause came on to be heard upon the motion of Marguerite Pearce and George W. Pearce to dissolve the injunction and gave these defendants leave to file a suggestion of damages; the other was in the decree of May 18, 1931, which reserved for further hearing the question of the assessment of damages. The suggestion and bill of particulars which were filed were the joint suggestion and joint bill of particulars of Marguerite Pearce, George W. Pearce and August Froelich. No motion had ever been made by August Froelich to dissolve the temporary injunction, and his counsel insist that inasmuch as the evidence discloses that Mrs. Pearce and Mr. Froelich together own an undivided interest in certain portions of the land covered by the lake, it was not necessary for him to do so, but he was entitled to receive the benefit or advantage of the motion filed by Mr. and Mrs. Pearce. As sustaining this contention, the case of *Scherzer v. Keller,* 321 Ill. 324, is relied upon. It appeared in that case that Charles L. Keller and H. P. Harrington were partners engaged in business as bridge engineers, and after a temporary injunction had been issued as prayed for in the bill, the defendants moved for its dissolution, which was heard

upon the bill, answers, exhibits and affidavits, and the contention was made that the assessment of damages could not be made to both of the defendants, inasmuch as the evidence disclosed that Keller employed the attorneys and therefore Harrington was not damaged. In disposing of this contention the Supreme Court said: ''Keller and Harrington were partners. The injunction was against both of them. The business was the business of the partnership, in which Harrington was as much interested as Keller, and the assessment was properly made in favor of the two jointly.'' In the instant case Mr. Froelich employed Messrs. Schroeder and Beaubien to represent his interests, while Mr. and Mrs. Pearce employed Messrs. Runyard and Behanna with whom Mr. McGaughey was associated. The motion to dissolve was entered by the solicitors for Mr. and Mrs. Pearce and did not purport to be a motion on behalf of anyone else except them, while in the *Scherzer* case both defendants moved for a dissolution of the injunction and filed suggestions of damages within the time granted by the court. There is nothing said in that case in conflict with our holding here. So far as the temporary injunction in this case is concerned, Mr. Froelich made no complaint thereof, but did join with the other defendants in error in filing a suggestion of damages and a bill of particulars. In view of the fact that he had not filed any motion to dissolve the injunction, and had filed no suggestions prior to the entry of the final decree, and had not been granted leave to do so by that decree or by any order entered prior thereto, we are clearly of the opinion that his joining in the suggestions and in the bill of particulars was unwarranted. Mr. Froelich could not have incurred any obligation to pay his solicitors any compensation to procure the dissolution of the temporary injunction because they made no motion in his behalf and exerted

no professional efforts to bring that about. The motion of plaintiffs in error to strike the joint suggestion of damages and the joint bill of particulars from the files should have been sustained.

It will be observed that on November 26, 1930, the master, to whom the cause had been referred, filed his report of the testimony and recommended that the bill be dismissed for want of equity, inasmuch as the complainants had not proven the allegations of their bill. While there is no order showing that the cause was heard upon its merits on January 12, 1931, the evidence in this record of the solicitors who participated in the several hearings discloses such to be the fact. Sylvester Quindry testified that he was one of the solicitors for plaintiffs in error, having become connected with the case after the testimony had been closed by the master. He further testified that on January 12, 1931, he argued the case upon its merits at Woodstock and that the next proceeding in the case was on January 23, 1931, at Waukegan where the chancellor read an extended opinion and announced what his decision would be, and stated that he would dismiss the bill unless the State was made a party. Werner W. Schroeder testified that he was a practicing lawyer and had been connected with this litigation since its inception, representing August Froelich and associated with Mr. A. F. Beaubien; that after the evidence was concluded, he aided in the preparation of a written brief, which was submitted to the master, and after the coming in of the master's report, the larger portion of a day was spent in arguing the case before the court at Woodstock, and thereafter the court rendered an opinion at Waukegan. George S. McGaughey testified that he was a practicing attorney and connected with the firm of Runyard and Behanna and represented George W. and Marguerite Pearce through the entire hearing of this case, and recalled

that the court gave his opinion in writing at Waukegan, stating that the relief prayed for could not be granted complainants and he would dismiss the case on the ground that necessary parties complainant had been omitted, as the People of the State of Illinois should be made a party complainant.

After the hearing had been had on January 12, 1931, and after the chancellor had announced his decision on January 23, 1931, the next step was taken by the State's Attorney of Lake county, who, on January 26, 1931, served notice on the solicitors for complainants and defendants that he would, on January 29, 1931, appear before the chancellor and ask leave to intervene and served them with a copy of his proposed intervening petition. In pursuance to this notice, leave was granted to the State's Attorney to intervene on January 29, 1931, and on that day his intervening petition was filed, a hearing had thereon, the prayer thereof granted, and an amended bill of complaint was filed by leave of court. Following this, but on the same day, the defendants, Marguerite Pearce and George W. Pearce, filed their motion to strike this intervening petition and the amended bill of complaint from the files and also filed their motion to dissolve the temporary injunction. Nothing further was done until February 27, 1931, at which time counsel for Marguerite Pearce and George W. Pearce served notice upon opposing counsel and the State's Attorney that they would call up these motions for disposition on March 2, 1931, and on that day the evidence discloses that after the motion to strike the intervening petition and the amended bill from the files had been heard and denied by the chancellor, that thereupon one of the solicitors representing one of the defendants in error suggested that the temporary injunction ought to be dissolved, and the chancellor stated it would be, but that immediately upon the application of the State, he would

grant an injunction to the People without bond, as prayed for in the amended bill.

It is true that one of the solicitors did testify that he believed that there were about three arguments had upon the motion to dissolve, but the record and the other testimony discloses that no steps were taken in the case after the motion to dissolve was filed on January 29, 1931, until the motion was heard and allowed on March 2, 1931, except the giving of notice on February 27, 1931, that the motion to strike the amended bill from the files and the motion to dissolve would be called up for disposition on March 2, 1931.

The propriety of suing out the temporary injunction was therefore never called up or considered by the court until after the case as stated in the original bill had been heard upon its merits. The evidence had been concluded before the master, objections to his report had been presented, argued and overruled. The report of the master and his conclusions had been filed. A hearing had been had before the chancellor and he had taken the case under advisement for 10 days and had announced his decision. The State's Attorney had been granted leave to intervene, his intervening petition had been filed, a hearing had been had thereon and an amended bill of complaint had been filed, and the cause was pending upon a motion to strike the amended bill of complaint from the files before the motion to dissolve the temporary injunction was filed.

In *Attorney-General v. Marsh,* 16 Sim. 570, a temporary injunction was granted on February 16, 1849, restraining the defendant from selling or disposing of the property or effects of John Squire, a lunatic, until defendant should fully answer the bill or the court make further order to the contrary. On February 21, 1849, an amendment was made, making the lunatic coplaintiff with George Squire, the relator. On March

27, 1849, a motion was made to commit the defendant for a breach of the writ. In denying that motion, the chancellor held that the parties who obtained the preliminary injunction by the addition of a coplaintiff made it impossible for the defendant to answer the bill upon which the preliminary injunction issued, and that the original bill no longer existed and the preliminary injunction was gone by reason of the amendment. In *Binney's Case,* 2 Bland (Md.) 99, it was held that a temporary injunction would not, as of course, be dissolved on making a trivial or unimportant amendment, but where an amendment is asked for the purpose of introducing new facts or where the object is to bring before the court the principal mover of the alleged wrong, so as to require a new frame and direction to be given to the writ of injunction, then the very prayer for such an amendment carries with it a tacit admission that the basis of the injunction, which had been previously granted, is substantially wrong, and that therefore, upon granting the amendment, the injunction is gone, of course, unless expressly saved by the terms of the order granting the amendment. In this State these authorities may not be followed because it has been held that the amendment of a bill or the filing of an amended bill, after a temporary injunction has been granted, does not operate to dissolve the injunction as of course. 32 C. J. 407; *Craig v. Craig,* 175 Ill. App. 176; *Savio v. Vieno,* 203 Ill. App. 631. However, in the instant case, the chancellor had granted plaintiffs in error leave to join with the People of the State of Illinois in filing an amended bill without making any reference to the temporary injunction previously issued. By joining with the People of the State of Illinois and filing an amended bill, the complainants in the original bill in effect abandoned their original bill and the whole cause of action was merged or transferred to

the amended bill, and while no formal order had been entered dissolving the temporary injunction, we are at a loss to understand how, after the chancellor had announced his conclusion, and after the amended bill had been filed and after the chancellor had heard and refused the motion to strike the amended bill from the files, any extensive legal services were required to bring about the formal order of March 2 dissolving the preliminary injunction. Can it be seriously contended that $5,000 is the reasonable, usual and customary fee in Lake county for the legal services rendered, as shown by this record, in bringing about the dissolution of this injunction?

Mr. McGaughey, one of the solicitors representing Marguerite and George W. Pearce, testified that from an examination of the files and his knowledge of the case, he was of the opinion that $5,000 would be the reasonable, usual, fair and customary solicitor fees of the defendants upon the motion to dissolve the temporary injunction. He detailed at length, on cross-examination, the services rendered in checking over the bill, the parties thereto, the ownership, title and descriptions of the land involved and the work involved in preparing the defense, briefing the cause and examining authorities from about every State in the Union. He stated that a proper preparation of the defense necessitated an examination and search of old records of the Lake county·board of supervisors, checking records at Springfield, investigating leases, plats and interviewing witnesses. He further testified that he made a thorough brief covering the field of temporary injunctions prior to the time the motion to dissolve was granted, and estimated that the services rendered by the solicitors in the preparation of the pleadings and upon the review by the Supreme Court would be reasonably worth $2,500 in addition to the $5,000 for their services in procuring the dissolution of the injunction.

Mr. Werner W. Schroeder testified that he and his associate, representing Froelich, proceeded to examine the title and went through a number of abstracts in order to ascertain whether Lake Zurich was in fact meandered, consulted with the office of the auditor of public accounts, with certain officers of the Chicago Title and Trust Company, communicated with the Department of Interior and the Commissioner of the General Land Office, obtained photostatic copies of the survey of the townships where this lake is located, made a trip to Washington, D. C., and took the deposition of the Assistant Commissioner of the Land Office, interviewed witnesses, examined leases and other documents, prepared a brief with an assistant, upon which they worked for practically a month, examined all of the authorities in Illinois having to do with water rights and furnished the master with a written brief having also to deal with adverse possession, dedication and other issues involved in this cause. After detailing at length the services that were performed, this witness was asked to state whether he had an opinion, from his knowledge and information of this case and the services performed by him and his associates, as to the fair and reasonable solicitor fees upon the dissolution of the temporary injunction and after answering in the affirmative, stated that for the work up to the decree and to the time of the dissolution of the temporary injunction and for the part of the work that was done to procure the dissolution of the temporary injunction, it was his opinion that a fair and reasonable and customary fee would be $5,000. On cross-examination, he said that taking into consideration the value of all the services done by all the attorneys up to the date of the entry of the decree, he would say that such services were worth at least $10,000, outside of the work that was done in the preparation of the briefs in the Supreme Court, and that he arrived at his opinion of $5,000 for procuring

the dissolution of the injunction as that necessitated about one-half the entire work that was done.

The law is well settled in this State that a defendant may recover as damages, upon the dissolution of a temporary injunction, the solicitor fees which he has paid or become obligated to pay, for services rendered in obtaining a dissolution of an injunction, but not those rendered in the general defense of the suit. *Lambert v. Alcorn,* 144 Ill. 313. Only such services as were rendered in getting rid of the preliminary injunction on a motion to dissolve are recoverable as damages and where the evidence makes no discrimination between services rendered in the case generally and services which were strictly necessary to procure the dissolution of the injunction, there is no evidence upon which the assessment of damages can be based, and an allowance in such a case cannot be sustained. 32 C. J. 477; *Zibell v. Barrett,* 30 Ill. App. 112; *Landis v. Wolf,* 206 Ill. 392; *Jevne & Almini v. Osgood,* 57 Ill. 340; *Alexander v. Colcord,* 85 Ill. 323; *Dempster v. Lansingh,* 234 Ill. 381. If the injunction is the primary object of the suit, and a motion is made to dissolve, counsel will be entitled to a reasonable fee based upon the labor performed in the attempt to dissolve. The damages allowed by the statute are only those sustained by reason of an improper and wrongful suing out of the injunction and the solicitors' fees can only extend to the motion to dissolve. *Marks v. Columbia Yacht Club,* 219 Ill. 417; *Lawrence v. Traner,* 136 Ill. 474. The statute only allows the assessment of damages sustained by reason of improperly suing out the injunction, and the damages must be confined alone to that ground. The charge for lawyer fees could only extend to the motion to dissolve the injunction. *Elder v. Sabin,* 66 Ill. 126. The damages assessed upon the dissolution of an injunction should be only for the additional expense incurred in procuring the dissolution over and above those necessarily incurred in pre-

paring the case for hearing on the merits. *Blair v. Reading,* 99 Ill. 600. If the dissolution of an injunction results merely from the defense and trial on the merits and no effort to obtain such dissolution otherwise is shown to have been made, there can be no allowance for attorney fees irrespective of whether an injunction is or is not the sole relief sought in the original suit. 32 C. J. 475. The counsel fees which may be recovered must be reasonable and such as would be fair compensation for the services rendered in procuring the dissolution of the injunction, and are limited to those necessary in procuring such dissolution, and if a defendant, instead of attempting to remove the preliminary injunction, seeks rather to prevent the issuing of a permanent injunction or directs his efforts to defeating the action of complainant, the expense of counsel fees incurred is an incident of the suit and is not recoverable as damages sustained by reason of the injunction, and if there is nothing to show what portion of the services were rendered in attempting to procure such dissolution, as distinguished from those rendered in general defense of the suit, there can be no recovery. 14 R. C. L. 487, 488.

In our opinion, the sum fixed as damages for solicitor fees is excessive, and the evidence does not discriminate between the services rendered in procuring the dissolution of the injunction and the services rendered in the preparation and hearing of the case upon its merits. The testimony of none of the witnesses was limited to the proceedings or service rendered upon the motion to get rid of the injunction, and the order allowing defendants in error any sum for solicitor fees cannot be sustained upon the evidence in this record.

The chancellor found that defendants in error had sustained damages in addition to solicitor fees to the extent of $2,500 for loss of income, use and enjoyment of the premises while the preliminary injunction was

in force. The basis for this finding is the evidence of Marguerite Pearce, August Froelich and Homer Cook, most of which was heard over the objection of plaintiffs in error, and inasmuch as there must be another hearing, this evidence will be considered. Mrs. Pearce testified that she had resided at Lake Zurich for 35 years and had run a boat livery there for five years, that during the season of 1928 she rented the use of her portion of the lake to 19 persons, who placed thereon 231 boats for which she charged $3 per boat, but as we understand her testimony, the amount which she actually collected averaged only $1.30 per boat. She further testified that in one season prior to the issuance of the injunction, there were 152 boats on the lake from which she was able to get $281, which sum included $50 which she received for a large motor boat. She further testified that the income from boats in 1931 was around $250, and during the season of 1932 and up to September 18, 1932, she had eight boats of her own which she rented, receiving therefor $380, the usual rental therefor being 25 cents per hour, and $1.50 per day. She testified further that at one time during the season of 1932 she counted on the lake 162 boats placed there by other parties, and computing them at the rate she got for her eight boats, she was of the opinion that $3,300 would have been taken off the lake during the season of 1932, one-third of which would have been hers, and it was her opinion that $4,000 was the fair, cash, market value of the use and enjoyment of the waters of the lake per season while the injunction was in force.

August Froelich testified that he had resided at Lake Zurich for 27 or 28 years, and that its waters were used for boating, fishing and bathing, and that in his opinion the fair, cash, market value of the use and enjoyment of the waters of the lake for these purposes was approximately $2,000 to $2,500 per year. Upon cross-examination he stated that this amount

would be derived from the rental of boats for boating and fishing purposes, that all together there were about 200 boats upon the lake during the year, 30 of which were owned by cottage owners and proprietors around the lake, that he had about 12 boats for rent, receiving therefrom 25 to 35 cents per hour on week days, and 50 cents per hour on Sundays and holidays, that he rented his boats just the same whether there was an injunction or not, but was of the opinion that he could have rented more if the injunction had not been granted inasmuch as the injunction did restrain him from interfering with anybody else using the lake. He further testified that he could not give any information about the amount of business he did before the injunction was issued because he only became the owner about a year prior to the time the suit was instituted.

Homer Cook testified that he lives at Wauconda and has operated a boat livery at Bangs Lake for seven years, charging 50 cents per boat for the first two hours, 15 cents per hour thereafter, and $1.25 per day. Bangs Lake covers about 500 acres, has 1,000 summer residents and 500 all-year residents and is located on Rand Road, six miles from Lake Zurich, which is also located on Rand Road. Mr. Cook testified that he is acquainted with Lake Zurich and its surroundings and that defendants in error own about 150 acres in the center of that lake touching the shores a little bit on the south and west side. From his experience in operating his business at Bangs Lake and his knowledge of the property involved in this suit, he was of the opinion that $1,500 was the fair, cash, market value per year for the use and enjoyment of boating on Lake Zurich. On cross-examination, he said in 1931 he had 98 boats on Bangs Lake, the gross average rental being $37.50 per boat, and that his opinion as to the value of the use of Lake Zurich was

based upon what he made at Bangs Lake and that this amount would be made by renting boats if defendants in error had a monopoly on the 150 acres in the middle of Lake Zurich. He further testified that in order to do so "it would take around fifty boats, they would be rented some days. That is a chance. I rented all of mine some days, all speculation upon how many boats would be rented."

Compensation for losses sustained by a defendant which are the actual, natural and proximate result of the wrong committed by the restraining order while it is alive and operating is the proper measure of damages in a case of this character. Any actual damage, suffered by reason of the wrongful suing out of the injunction is a proper subject of inquiry, but claimed damages which are so uncertain as to be incapable of ascertainment cannot be recovered. Probably the most general rule, where the defendants have been deprived of the control, use or enjoyment of real or personal property is that there may be a recovery of the value of the use or the reasonable rental value of the property during the time its enjoyment was prevented by injunction. This is the true measure of damages applicable where a person has been prevented by injunction from completing a house, but in such a case it has been said that such damages cannot be defined with any degree of accuracy. 14 R. C. L. 482, 483. A recovery may generally be had for the loss of the use of specific property where the reasonable worth of such use may be shown with fair certainty. 8 R. C. L. 490. The measure of damages is the rental value of the property if it has a rental value or if not, then the value of its use to the injured party for the time he was deprived of it. *Priestly v. Northern I. & C. R. Co.,* 26 Ill. 205. And in a case where the use of property is restricted by contract, a recovery can only be had on the basis of the loss of such restricted use. 8

R. C. L. 490, 491. In estimating the damages where an established business is interfered with, profits which would have been made may be recovered, *Chapman v. Kirby,* 49 Ill. 211, but a witness cannot give it as his opinion as to the amount of profits that could have been made, or that the profits lost were a specified sum or give his judgment or opinion as to the extent of loss a merchant will suffer by the breaking up of his business. 8 R. C. L. 649, 650.

The value of this property owned by defendants in error, as expressed by the witnesses, was in renting boats for fishing, boating, bathing and other pleasure purposes. The preliminary injunction did not interfere with defendants in error going on or using the lake or any part of it, but it did deprive them of the exclusive control of that portion of the lake owned by them. Had no injunction been issued, defendants in error and the other owners of the lake or those whom they might permit were the only persons who might go upon and use it. The injunction therefore did prevent defendants in error, as proprietors of a portion of the lake, from exercising exclusive control and dominion over that portion of the lake which they owned. The evidence discloses that the lake covers about 235 acres of land, approximately two-thirds of which is owned by defendants in error, and of this portion defendant in error Marguerite Pearce owned one-third and defendant in error August Froelich owned the remaining two-thirds, so that of the entire lake, Mrs. Pearce owned approximately two-ninths and August Froelich four-ninths, and it was of these undivided interests that defendants in error were entitled to the exclusive use, enjoyment and control.

No established business had been interfered with by the injunction, yet it seems clear to us that some damage was perhaps suffered by defendants in error by reason of being deprived of the exclusive use, con-

trol and enjoyment of their own property. It is impossible to prove the exact amount of damages sustained, but this is no reason for denying damages altogether. The injunction did not deprive defendants in error from renting boats as they had a right to do previous to the issuance of the injunction. All they were restrained from doing was from interfering with every other person who might desire to use their property. What this would amount to in damages is almost impossible of ascertainment. They certainly were not entitled to receive the fair, cash, market value of the exclusive use of the waters of Lake Zurich for boating, fishing and bathing purposes during the time the injunction was in force, but would only be entitled to receive the fair value of the exclusive use of that portion of the lake which they did own while the injunction was in force. As there is no competent evidence in the record showing this amount, that portion of the order allowing defendants in error $2,500 for loss of income, use and enjoyment of their premises must also be reversed.

The order of the circuit court is reversed and this cause is remanded to the circuit court of Lake county, with directions to strike the joint suggestion of damages and the joint bill of particulars from the files and grant leave, if so desired, to defendants in error, Marguerite Pearce and George W. Pearce, to file suggestions of damages and for further proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*